**Horace J. FELDMAN**
v.
**UNITED STATES.**
No. 198–59.

United States Court of Claims.
Feb. 3, 1960.

Madden, J., dissented.

Hans A. Nathan, Washington, D. C., for plaintiff.

Kendall M. Barnes, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

JONES, Chief Judge.

The plaintiff seeks to recover the salary which would have accrued to him had his Government employment not been improperly terminated. The defendant has moved the court to dismiss the plaintiff's petition on the ground that

the claim asserted is barred by limitations,[1] and on the further ground that the petition fails to state a claim on which relief can be granted.

Plaintiff, a veteran and a lawyer, served as clerk of a United States Military Government Court in Germany under the Department of the Army. In mid-1949 these functions in Germany were transferred from the Army to the Office of High Commissioner for Germany (HICOG), which was placed under the Department of State. On November 7, 1949, plaintiff received a notice of termination of his services, effective December 4, 1949. Plaintiff appealed to the Civil Service Commission, claiming that under § 12 of the Veterans' Preference Act of 1944, 58 Stat. 390, 5 U.S.C.A. § 861, he should have been transferred to HICOG.

On July 1, 1952, the Chairman of the Commission's Board of Appeals and Review submitted to the State Department a "recommendation" by the Commission that plaintiff "be restored to active duty retroactively to the day following the last day in a full pay status and in a position of like status and pay in your Department to that from which * * * [he was] improperly separated in the Department of the Army."

When it became apparent that the State Department would not comply with this July 1 recommendation, the Chairman of the Civil Service Commission sent a letter (dated December 5, 1952) to the Secretary of State renewing the Commission's recommendation. On December 22, 1952, the Department of State notified the Civil Service Commission by letter that "the Department has determined that it must respectfully decline to comply with the recommendations." [2]

On May 4, 1953, the Civil Service Commission submitted a third letter to the Department of State, again reiterating its decision that the plaintiff should be restored to duty. The State Department continued to disregard the Commission's recommendation, and the plaintiff thereafter filed suit in the district court to compel his reinstatement. This relief was denied and his complaint dismissed on April 22, 1959.[3]

The present petition was filed in this court on May 1, 1959—almost ten years after the Army terminated plaintiff's employment, and more than six years after the July 1, 1952, and the December 5, 1952, Civil Service Commission recommendations, but *less* than six years after the Commission's May 4, 1953, reiteration of the earlier recommendations. The Government contends in its motion to dismiss that the petition was filed more than six years after the plaintiff's claim first accrued. The resolution of this issue hinges on a determination of the effect of these various Civil Service Commission recommendations.

■ It is necessary to consider first the Government's contention that the plaintiff's only claim first accrued when he was dismissed in December 1949, and that the decision of the Civil Service Commission recommending plaintiff's reinstatement did not create a new cause of action. This court held in Goodwin v. United States, 1954, 118 F.Supp. 369, 127 Ct.Cl. 417, that, since § 14 of the Veterans' Preference Act [4] provides that the Commission's recommendations in connection with appeals processed under

---

1. 28 U.S.C. § 2501 (1958) provides that "Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

2. The recommendations referred to by the State Department related not only to the plaintiff but also to another former employee of the United States Military Government Court in Germany. See Casman v. United States, Ct.Cl., 181 F.Supp. 404.

3. The defendant is not contending that the plaintiff's claim is res judicata. The order of the district court does not state the reason for the action. The defendant has been advised, however, that the motion for dismissal was based upon the contention that the claim was moot, since the court in question passed out of United States control in 1955, and reinstatement to the position was therefore impossible.

4. 58 Stat. 390 (1944), 5 U.S.C.A. § 863.

§ 14 shall be mandatory upon the employing agency, a recommendation that the employee be reinstated created a new statutory claim against the employing agency for back pay.

■■ Section 12 (the section involved in the case at bar) gives veterans preferential rights in reductions in force, but contains no comparable mandatory provision. The Congress, however, amended § 19 of the Veterans' Preference Act in 1948 to provide that "any recommendation by the Civil Service Commission, submitted to any Federal agency, on the basis of the appeal of any preference eligible, employee or former employee, shall be complied with by such agency." 62 Stat. 575 (1948), 5 U.S.C.A. § 868, amending 58 Stat. 391 (1944). It is fairly obvious that this amendment to § 19 was intended to make decisions of the Civil Service Commission in connection with any appeal processed under the Veterans' Preference Act binding upon the executive departments and agencies. The Committee Reports clearly point toward this construction:[5]

"This bill proposes an amendment to section 19 of the Veterans' Preference Act of 1944 * * * by providing that the findings of the Civil Service Commission in connection with *any appeal to the Commission under the provisions of the Veterans' Preference Act* shall be complied with by the executive departments and agencies.

"The attention of the committee has been directed many times to decisions of the Civil Service Commission which have been disregarded by the executive departments and agencies. It is obvious that the Veterans' Preference Act is a nullity unless provision is made to make effective the decisions of the Civil Service Commission with respect to appeals processed by veterans and other employees under the provi-

sions of the Veterans' Preference Act.

"During the first session of the Eightieth Congress, Public Law 325 [61 Stat. 723 (1947)] was approved which provides that the decisions of the Civil Service Commission in connection with appeals by veterans processed under section 14 of the Veterans' Preference Act [5 U.S.C.A. § 863] shall be binding upon the executive departments and agencies. This bill extends the provisions of that law to include *any appeal* processed under the Veterans' Preference Act so that a decision favorable to a veteran or other employee will be enforceable. [Emphasis supplied.]"

We believe that the reasoning in the Goodwin case is applicable here, and, therefore, that the Civil Service Commission recommendation in connection with the plaintiff's appeal did create a new statutory claim for back pay.

The problem in this case arises from the fact that the initial July 1, 1952, recommendation of the Civil Service Commission was renewed on May 4, 1953 —less than six years prior to the filing of the plaintiff's petition in this court.

■ After reviewing the circumstances surrounding the series of Civil Service recommendations relating to plaintiff's reinstatement we are forced to conclude that the plaintiff's statutory claim first accrued not later than December 5, 1952, at the time the second recommendation was submitted to the State Department.

Actually, the original recommendation on its face constituted a final determination by the Commission, and the plaintiff's statutory claim would ordinarily have accrued on July 1, 1952.[6] However, there are indications that this July 1 decision was stayed by the Civil Service Commission. On July 15, 1952, the Department of State requested "that the

---

5. H.R.Rep. No. 1817, 80th Cong., 2d Sess. (1948), 2 U.S.Code Cong.Serv., p. 1966 (1948).

6. See Goodwin v. United States, 118 F. Supp. 369, 127 Ct.Cl. at page 420.

time required [by the July 1, 1952, recommendation] for the Department to advise the United States Civil Service Commission regarding the proposed action in this case be extended for thirty days." This request, which the Commission granted on July 18, 1952, was based on the nonavailability of the plaintiff's personnel records.

On August 12, 1952, the Department of State asked for "a further extension of time in order to prepare and submit its appeal from the decision of the Commission." In response to this request, the Chairman of the Board of Appeals and Review of the Civil Service Commission granted the Department of State the opportunity of "submitting its appeal to the Commission not later than September 2, 1952." The Department of State did not submit an "appeal," but instead notified the Civil Service Commission on September 2 that it was reviewing the Commission's recommendation that the plaintiff be restored to duty retroactively, and that it would advise the Commission as soon as a final decision was reached.

The plaintiff reads into these two extensions of time granted the State Department a decision by the Civil Service Commission to stay its July 1, 1952, recommendation, thus temporarily denying it finality pending an "appeal" by the State Department. The questions thus raised of "When did the Commission's recommendation become final?" and "When, therefore, did the plaintiff's claim first accrue?" are complicated by the scarcity of definitive Civil Service Commission regulations. The retention preference regulations for use in reductions in force merely provided that

"Any employee who feels that there has been a violation of his rights under the regulations in this part [Part 20] may appeal to the appropriate office of the Civil Service Commission within 10 days from the date he received his notice of the

action to be taken [i. e., the reduction in force]. * * * (12 Fed. Reg. 7189 (1947), 5 C.F.R. § 20.13 (1949) (appeals))."

It was further provided that

"Whenever the Commission, as the result of a decision on the appeal of an employee, disapproves the action taken [by the employing agency] under the regulations in this part, the head of the department or governmental entity shall restore the employee to active duty. (12 Fed. Reg. 7189 (1947), 5 C.F.R. § 20.14 (1949) (actions disapproved by the Commission))."

There is no indication in these regulations of the effect to be accorded a decision of the Board of Appeals when (as in the case of the July 1, 1952, recommendation) it is submitted to the agency "by direction of the Commission." Neither was there any provision for an appeal to the Commissioners from "the initial decision within the Commission," as was the case under the 1953 change in the regulations.[7] Even if we were to say that "the decision of the Board [of Appeals and Review] shall be final," that "there is no further right of appeal," and that "a recommendation for corrective action by the Board is mandatory and must be complied with by the agency"—as the regulations now provide [8]— the regulations then in existence do not tell us what effect, if any, an "appeal" by the agency to the Commission, or a reconsideration by the Commission, has on the finality of a Board decision.

Assuming that plaintiff's interpretation of communications between the Commission and the State Department is correct, and that a stay of the July 1, 1952, recommendation was granted in July and again in August pending a reconsideration by the Commission, the plaintiff is still faced with the Civil Service Commission's subsequent renewal on December 5, 1952, of the "stayed" recommendation. This renewal of the

7. 17 Fed.Reg. 11733 (1952), amending 5 C.F.R. § 20.9 (Supp.1954) (appeals).

8. 5 C.F.R. § 20.9 (Supp.1958) (appeals).

original recommendation was submitted in a letter from the Chairman of the Civil Service Commission to the Secretary of State. In this letter, the Commission reiterated the July 1, 1952, recommendation and then stated that

"Since that time [i. e., July 1, 1952] we have had several informal contacts with representatives of * * * [the State] Department for the purpose of assisting them in placing *our* recommendation in effect. As of this date we are informed, however, that *our* recommendation still has not been complied with." [Emphasis supplied.]

The letter concluded:

"In order that this matter may be properly closed it is requested that you advise the Commission not latter than close of business December 22, 1952, of the corrective action taken or proposed to be taken by your Department in behalf of * * * [plaintiff]."

Whether this December 5, 1952, letter is viewed as a renewal of the July 1 recommendation, or as a decision to revoke a stay of the July 1 recommendation, we believe it did give finality to the Commission's recommendation that plaintiff be restored to duty. There is no indication in this December 5 letter that the Commission was prompting the State Department to press for a reopening and reconsideration of the July 1 decision, or to perfect an "appeal" to the Commission. Nor do we find any indication that the Commission intended to further delay the effect of the recommendation pending an appeal or a reconsideration. On the contrary, the letter speaks only of compliance with the recommendation.

On December 22, 1952, the State Department replied unequivocally that "for reasons hereinafter stated the Department has determined that it must respectfully decline to comply with the recommendations." The plaintiff argues that this letter, in which the State Department spells out its reasons for failing to comply with the recommendation, constituted an "appeal." We do not agree with plaintiff's interpretation. But regardless of how the State Department's December 22 reply is characterized, it could not in itself affect the finality of the Commission's recommendation. Under the statute and the regulations, the December 5 recommendation —which clearly originated with the Commissioners—was on its face a *final* decision. And, as we have already stated, there is nothing in the record to show that the Commission intended to further stay the effectiveness of this decision.

It is of no import that the December 5 recommendation was not couched in mandatory language. The statute provides that "any *recommendation* by the Civil Service Commission, submitted to any Federal agency, on the basis of the appeal of any preference eligible, employee or former employee, *shall be complied with* by such agency." [9]

It is true that the Commission did, on May 4, 1953, reiterate its earlier recommendation after making a further study of plaintiff's case, "taking into consideration the arguments advanced by the Department of State in the letter of December 22, 1952, as to the reasons it must decline to comply with the Commission's recommendation * * *." It was, of course, not unnatural that the Commission should make one further attempt to secure compliance with its earlier (and presumably mandatory) recommendation. However, neither the statute, nor the regulations, nor logic permits us to hold that the mere reiteration of a prior decision affects the finality of the prior decision.

We are left then with plaintiff's contention that the Commission stayed its December 5 recommendation pending a reopening and reconsideration of the case. But here again we can only reiterate that, regardless of what may have

---

9. 62 Stat. 575 (1948), 5 U.S.C.A. § 868, amending 58 Stat. 391 (1944). [Emphasis supplied.]

transpired between the Commission and the State Department prior to the December 5 recommendation, we can find absolutely nothing in the record to indicate that the Commission intended the December 5 recommendation to be anything but final and binding on the State Department. And since the December 5 decision was not stayed it must be considered final, even though the Commission subsequently felt compelled to reiterate its December 5 recommendation and to answer the State Department's December 22 documented refusal to comply with that recommendation.

The same result is reached under the rule that the period of limitations on a suit is tolled while administrative remedies are being pursued and that it does not begin to run until the Civil Service Commission has finally passed on the case.[10] Here again the finality of the December 5, 1952, recommendation is not affected by the Commission's subsequent reiteration of that recommendation.

Since the plaintiff's petition was filed more than six years after his discharge and more than six years after the Civil Service Commission's final recommendation, we have no recourse but to hold that these claims are barred by limitations.

In the alternative, the plaintiff urges that under a so-called continuing claim theory he is entitled in any event to all back pay accrued within six years immediately prior to the filing of his petition.[11] In light of the uncertainty existing in this area of the law we shall take the opportunity to reexamine the continuing claim theory with respect to claims arising out of an improper reduction in force. There are valid considerations present on both sides of the problem. The task of balancing them out is not an easy one.

Looking first at the Government's position we are met with the contention that, if the court applies the continuing claim theory in a reduction-in-force situation, the word "first" is thereby read out of the statutory phrase, "within six years after such claim first accrues."[12] Despite the surface appeal of this argument, it begs the question. If, under the continuing claim theory, "each failure of the employer to pay the wages or salary at the end of the time stipulated for payment will give rise to a separate claim or cause of action for wages not paid"[13] then each separate claim "first accrues" when the Government fails to pay the salary related to each separate claim. The validity of the continuing claim theory cannot, therefore, be determined merely by a quick glance at the wording of the limitations statute; it is, of course, not unusual for a statute of limitations to spell out the time period within which a petition may be filed in terms of the accrual (or first accrual) of a claim, without setting up a formula for determining *when* the claim accrued. Since the wording of the statute of limitations is not decisive, we must look elsewhere to determine whether a continuing claim theory is valid or applicable in a reduction in force situation.

It cannot now be seriously questioned that this court has jurisdiction to grant recovery of back pay where a government employee has been illegally separated from government service.[14] In granting a money judgment for back pay this court is implementing the statutes and regulations governing reductions in force by refusing to recognize an illegal discharge and thereby indirectly forcing the agency to reinstate the plaintiff. In view of the basis for granting relief, we think the crucial question is whether the continuing claim theory is a

10. See Adler v. United States, 1956, 134 Ct.Cl. 200, 203.

11. See Cannon v. United States, 1956, 146 F.Supp. 827, 137 Ct.Cl. 104, 108 (concurring opinion).

12. 68 Stat. 1246 (1954), 28 U.S.C. § 2501 (1958).

13. Cannon v. United States, 146 F.Supp. 827, 830, 137 Ct.Cl. at page 108 (concurring opinion).

14. Lovett v. United States, 1945, 66 F. Supp. 142, 104 C.Cls. 557, affirmed 1946, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252.

proper device for implementing those statutes and regulations governing reductions in force.

We are not unmindful of the contention that the employee has something in the nature of a divisible contract with the Government, which the Government presumably breaches anew at the end of every pay period. However, the court believes that to characterize the employment relation between the plaintiff and the Government as founded on either a divisible or on an indivisible contract would be artificial. Although analogies to ordinary contract situations can be helpful in this area, they should not be controlling where the result conflicts with or fails to reasonably implement the statutes and regulations involved.

Under the continuing claim theory the illegally discharged employee would be permitted to wait until seven, ten, twenty or fifty years after his illegal discharge before filing his petition, and would still be entitled to recover all back pay accrued within six years immediately prior to the institution of the suit in this court. Since the unfairness of this result to the Government is more than apparent, we are unable to say that it reasonably implements the statutes and regulations involved. The crux of plaintiff's claim lies in the failure of the Government to afford him the protection of the statutes and regulations governing reductions in force and the resulting illegal discharge. If he is denied that protection and is illegally discharged he is entitled to petition this court for relief, but only if he seeks relief in this court promptly and without unnecessary delay.[15]

The plaintiff in the case at bar has waited more than six years after his claim accrued before seeking the aid of this court. His claim is therefore barred by the statute of limitations.

Defendant's motion is granted, and plaintiff's petition will be dismissed.

It is so ordered.

BARKSDALE, District Judge, sitting by designation, and LARAMORE and WHITAKER, Judges, concur.

MADDEN, Judge (dissenting).

I would hold that the plaintiff may recover the pay which would have been paid to him, if his rights had been respected, within the period of six years prior to the filing of his suit. See Judge Littleton's opinion in Cannon v. United States, 146 F.Supp. 827, 137 Ct.Cl. 104. I think the perils which the decision of the court seeks to guard against may be avoided by applying, in a proper case, the doctrine of laches.

---

15. This holding is not inconsistent with Moser v. United States, 1914, 40 Ct.Cl. 285.