**Robert T. MATHIS, Sr.**

v.

**The UNITED STATES.**

No. 231–67.

United States Court of Claims.

March 15, 1968.

Robert T. Mathis, Sr., pro se.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

OPINION

PER CURIAM.

This case concerns the running of limitations on a claim for illegal discharge from military service. Plaintiff (who re-enlisted in the Army on April 9, 1958, for three years) was discharged on September 26, 1960, for unfitness, with an undesirable discharge. He sought review by the Army Discharge Review Board which denied his appeal on December 21, 1960. Later he went to the Army Correction Board which rejected his application, without a hearing, on August 23, 1961. The petition in this court claims that the discharge was unlawful and that plaintiff is entitled to the unpaid pay and allowances accruing after the date of his discharge. The defendant moves to dismiss on the ground that the claim is barred by the six-year statute of limitations, 28 U.S.C. § 2501 (1964).

The first question is whether this type of claim for an illegal military discharge accrues at one time—i. e., at the time of removal or at the end of the administrative proceedings relating to the removal—or is a "continuing claim" in the sense that it continues to exist throughout the serviceman's period of enlistment. Where civilian employees of the Government are separated, we have held that the claim is not a "continuing" one but accrues at one time, once and for all. Friedman v. United States, 310 F.2d 381, 386–387, 159 Ct.Cl. 1, 9–11 (1962), cert. denied Lipp v. United States, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963); Feldman v. United States, 181 F.Supp. 393, 399–400, 149 Ct.Cl. 22, 30–32 (1960); Middleman v. United States, 91 Ct.Cl. 306 (1940). In military discharge cases we appear to have applied the same rule without much discussion

(see Mistretta v. United States, 120 F. Supp. 264, 266–267, 128 Ct.Cl. 41, 44 (1954); Goldstein v. United States, 130 F.Supp. 330, 332, 131 Ct.Cl. 228, 233, cert. denied, 350 U.S. 888, 76 S.Ct. 143, 100 L.Ed. 782 (1955); Webster v. United States, 179 Ct.Cl. 917 (April 1967)), but we have also assumed, in a case in which it made no difference, that the claim could possibly continue during the life of the enlistment. Kirk v. United States, 164 Ct.Cl. 738, 742–743 (1964). In the present case, as will appear, it does make a difference whether limitations began to run in September 1960, when plaintiff was discharged, or in April 1961, when his enlistment would have expired. We hold, for the reasons given in *Friedman* and *Feldman,* supra, that, as in the civilian cases, the "continuing claim" theory is inapplicable and the cause of action accrued all at once upon the plaintiff's removal. There is no reason for the military rule to differ from that governing civilian employees.

 The next issue is whether the claim arose upon the discharge on September 26, 1960, or not until the action of the Discharge Review Board (December 21, 1960) or perhaps that of the Correction Board (August 23, 1961). The answer flows from the recognized, oft-repeated principle that optional administrative remedies do not defer or toll the statute of limitations. We held in Kirk v. United States, supra, 164 Ct.Cl. at 742–743, that resort to the Discharge Review Board is permissive, not mandatory, and the same is true, *a fortiori,* of the Correction Board. Plaintiff had an Army board (to consider whether he should be discharged) in September 1960 before his separation, and that was the only required administrative remedy.[1] The claim therefore arose on September 26, 1960.

There is some uncertainty as to when the suit in this court must be deemed to have been initiated. The present petition was formally filed on July 10, 1967, but previously plaintiff had sent to the court, late in October 1966, a handwritten petition which was not filed, apparently because copies were not attached. Since plaintiff was at the time incarcerated in a state prison and was acting *pro se,* we

---

[1]. In contrast, the court has held, in those civilian removal cases in which the Civil Service Commission has a role, that limitations does not run until after the Commission's decision (if the Commission has considered the case or the appeal to it must be considered timely). See Friedman v. United States, 310 F.2d at 388, supra, 159 Ct.Cl. at 12–13; Keeney v. United States, 150 Ct.Cl. 53 (1960).

With respect to the military cases, we do not view recent Court of Appeals' decisions dealing with suits for restoration (or injunction), brought before completion of Review Board or Correction Board proceedings, as in conflict with our holding that limitations is neither tolled nor deferred by pursuit of such administrative remedies. See Ogden v. Zuckert, 111 U.S.App.D.C. 398, 298 F.2d 312 (1961); Schwartz v. Covington, 341 F. 2d 537 (C.A.9, 1965); McCurdy v. Zuckert, 359 F.2d 491 (C.A.5), cert. denied, 385 U.S. 903, 87 S.Ct. 212, 17 L.Ed. 2d 133 (1966); Sohm v. Fowler, 124 U.S.App.D.C. 382, 365 F.2d 915 (1966); Nelson v. Miller, 373 F.2d 474 (C.A. 3), cert. denied, 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980 (1967). None of those cases was concerned with limitations, but with the propriety of the court's intervening before completion of the various military remedies, and in large part the considerations bearing on that question are distinct from those inherent in the issue of limitations. In any event, four of the decisions are quite consistent with our holding today. *Ogden, Schwartz, Sohm* and *Nelson* clearly hold that pursuit of the military remedies is not a jurisdictional prerequisite to institution of a judicial action, and that a district court has a certain discretion to go ahead or await the completion of the military proceedings, depending on the circumstances. The *McCurdy* opinion, 359 F.2d at 494–495, can be read as holding the district court to be without jurisdiction because the administrative proceedings are still in process (see Nelson v. Miller, supra, 373 F.2d at 479), but we interpret the decision as ruling no more than that, in those particular circumstances, there was no reason for the district court to intervene. If we are wrong in this reading, we place ourselves on the side of the District of Columbia, Third and Ninth Circuits.

treat this earlier petition as the commencement of the action even though the paper did not comply literally with our rules. Cf. Fallen v. United States, 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964). But even on that basis the claim would be barred since the document was sent by the plaintiff no earlier than October 25, 1966,[2] and the bar of limitations had fallen a month earlier, on September 26, 1966—six years after plaintiff's discharge on September 26, 1960.

Plaintiff says, quite weakly, that he transmitted a petition to this court earlier than September 26, 1966 (he says it was in August 1966), but the court's files indicate that in April 1966 he merely requested a copy of an opinion in another case, and, later, asked our clerk (in a letter dated September 30, 1966) whether his office would reproduce copies of a handwritten petition if one were sent in. The clerk answered that letter on October 6, 1966, and about three weeks later papers were received from plaintiff. Our files reveal no indication of any other petition or complaint received before that time, and none before September 26, 1966. There is, accordingly, no reason to believe that any petition or complaint was actually sent to the court before that received at the end of October.[3] Plaintiff also suggests, without any proof,[4] that his handwritten petition was delayed by the prison officials, but there is absolutely no warrant for this accusation. The September 30th letter, mentioned above, indicates on its face that no petition had yet been submitted; plaintiff, the writer of the letter, refers to himself as a "forthcoming plaintiff" and the text of the letter contains no intimation whatever that the petition had yet been delivered to the prison authorities for mailing. Plaintiff now says that he did not want, at the time he wrote his September 30th letter, to risk prison punishment by suggesting that the prison authorities had already received his papers but were delaying their transmittal. This unsupported, after-the-fact, rationalization is too fanciful to call for a trial

---

**2.** The letter of transmittal is dated October 25, 1966, and four accompanying affidavits are all notarized on that date.

**3.** Plaintiff says that during the first week in August 1966 he mailed his petition to the court "but since only two (2) copies were mailed, they were returned for plaintiff to file additional copies pursuant to the Rules of this court." If that had happened, there would undoubtedly be a record of the return in the court's files, but there is none. We think that plaintiff, perhaps stimulated by a mistaken observation in a letter to him from the clerk's office, has confused the date of the papers he sent in October 1966. What happened was this: The papers received after October 25, 1966, were not filed but were transmitted by the clerk, without response to the plaintiff, to another office within the court. In February 1967, plaintiff inquired from the clerk about the docket number of his case (obviously referring to the papers transmitted in October). The clerk responded on March 1, 1967, that no case under his name had been filed but that the office did "have a faint recollection of having received some papers from you within recent months, but that they were returned to you without filing, in care of the Florida State Prison at Raiford,

Florida." In this the clerk was clearly mistaken; the documents received in October 1966 had not been returned to plaintiff but had been sent elsewhere within the court, without filing. Subsequently, plaintiff filed, in July 1967, the formal petition which bears docket number 231–67. That plaintiff was mistaken as to the date he first sent a petition to the court is further shown by the facts that (a) the Florida State Prison stated on May 24, 1967, on direct inquiry from plaintiff (after his release from that institution), that a complete check of its files shows no receipt of any legal papers returned from this court, and (b) plaintiff's letter of inquiry to the Florida State Prison on May 14, 1967, enclosing our clerk's letter of March 1, 1967, says explicitly that "I recall notarizing these papers on October 25, 1966." On the basis of all the information we have, we are satisfied that the first petition sent here by or on behalf of plaintiff was received toward the end of October 1966.

**4.** Plaintiff's formal petition was filed (in July 1967) and his briefs on the motion to dismiss were prepared and filed after his release from Florida State prison in February 1967. He was not then under the handicap of being jailed.

of further inquiry.[5] In sum, the materials before us show conclusively that plaintiff did not attempt to transmit a petition to this court before his claim became time-barred on September 26, 1966.

For these reasons, plaintiff's petition must be dismissed as barred by limitations. Defendant's motion to dismiss is granted and the petition is dismissed.

---

5. Plaintiff's covering letter forwarding the petition in October is dated October 25, 1966, and refers to the clerk's letter of October 6, 1966 (all in the same handwriting). It was obviously prepared in October. Moreover, at the time he filed his formal petition in July 1967 plaintiff gave no indication that he had been de-layed by the prison officials. That suggestion first popped up in his briefs in opposition to the defendant's motion to dismiss for untimeliness—about a year after the period during which he now says his papers were being unduly delayed by the prison personnel.