Ernie J. **JOHNSON**

v.

The **UNITED STATES.**

No. 88–74.

United States Court of Claims.

Dec. 17, 1975.

Lester P. Schoene, Washington, D. C., for plaintiff; R. L. Witherspoon, St. Louis, Mo., atty. of record.

Thomas J. Byrnes, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, for defendant.

Before DAVIS, SKELTON and KUNZIG, Judges.

DAVIS, Judge:

The claim is that (a) in July and August 1961 plaintiff made to the National Aeronautics and Space Administration (NASA) "suggestions, ideas and contributions relating to insulation of certain parts of space ships and vehicles; that he made and presented suggestions relating to wingless space craft, space ships and space vehicles, modules and space craft designed to successfully place men on the moon and return to earth"; (b) "the theories, exhibits, designs, models, materials, ideas and suggestions presented to the defendant had not previously been presented to the defendant by any one prior to the time this petitioner presented them to the defendant"; and (c) the Government, without paying compensation, has used and continues to use plaintiff's "ideas, theories, exhibits, plans, designs, contributions and materials." In April 1966 plaintiff submitted an application for compensation under 42 U.S.C. §§ 2457–58 to the NASA Inventions and Contributions Board; a hearing was held on May 8, 1967. In September 1967 upon recommendation of the Board, the Administrator of NASA rejected the claim for compensation and plaintiff was so notified on October 4, 1967. This suit, apparently brought under our general jurisdictional statute (28 U.S.C. § 1491), was filed on March 22, 1974. The Government has moved for summary judgment on the ground that the action is barred by the six-year statute of limitations (28 U.S.C. § 2501).[1]

Almost seven years elapsed between the denial by NASA of an award and the beginning of this litigation but plaintiff urges that his claim "first accrued" within the permissible six-year span. The contention is, on analogy to the principle that limitations on just compensation for a taking by flooding does not run until the full extent of the damages can be ascertained (*United States v. Dickinson*, 331 U.S. 745, 748–49, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947)), that the claim here did not really mature until plaintiff could measure, in reasonable form, his entire loss. Even if we were to accept this comparison *arguendo*, it is clear that by the time plaintiff applied to the Inventions and Contributions Board, and had his hearing, he himself felt that he could reasonably gauge the scope of the award he expected. The situation had become stabilized enough so that he felt that he could ask for an administrative award; by the same token his judicial claim had sufficiently ripened so that it could be characterized

1. "Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

as "first" accruing under 28 U.S.C. § 2501.[2]

Plaintiff's alternative argument is that this is a "continuing claim" on which he may be barred for periods prior to the six years antedating his filing of this suit but is not cut off from pursuing the claim for use during the six years before March 22, 1974. On this point there are two lines of authority in litigation between private parties. Applying California law, *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288, 292–93 (C.A. 9, 1969), rejects the "continuing claim" theory on the ground that the core of a claim for misuse of trade secrets is not the adverse use of the claimant's "property" but the initial rupture of the confidential relationship between the parties. *Shatterproof Glass Corp. v. Guardian Glass Co.*, 322 F.Supp. 854, 869–70 (E.D.Mich.1970), *aff'd on other grounds*, 462 F.2d 1115 (C.A. 6), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 518, 34 L.Ed.2d 487 (1972), follows *Monolith* without tying the rule to the law of any particular jurisdiction. *Underwater Storage, Inc. v. United States Rubber Co.*, 125 U.S.App.D.C. 297, 371 F.2d 950 (1966), *cert. denied*, 386 U.S. 911, 87 S.Ct. 859, 17 L.Ed.2d 784 (1967), took another position accepting the "continuing claim" theory after full discussion [3]—as did, more summarily, *Siegerist v. Blaw-Knox Co.*, 414 F.2d 375, 383 (C.A. 8, 1969), *Telex Corp. v. IBM Corp.*, 367 F.Supp. 258, 360 (N.D.Okl.1973), *rev'd and modified on other grounds*, 510 F.2d 894 (C.A. 10), *petition for cert. dismissed*, 423 U.S. 802, 96 S.Ct. 8, 46 L.Ed.2d 244 (1975), and *Koehring Co. v. National Automatic Tool Co.*, 257 F.Supp. 282, 293 (S.D.Ind.1966), *aff'd per curiam*, 385 F.2d 414 (C.A. 7, 1967).

We are not put to a choice between these differing trends, nor need we try to harmonize them. In our view this case turns on the cardinal fact that the plaintiff sought relief from the NASA Inventions and Contributions Board and was denied all recovery more than six years before he began the suit. Section 305(f) of the National Aeronautics and Space Act of 1958, 42 U.S.C. § 2457(f), directed the NASA Administrator to establish an Inventions and Contributions Board. In turn, Section 306, 42 U.S.C. § 2458, authorized the Administrator, "upon his own initiative or upon application of any person, to make a monetary award, in such amount and upon such terms as he shall determine to be warranted, to any person * * * for any scientific or technical contribution to the Administration which is determined by the Administrator to have significant value in the conduct of aeronautical and space activities. Each application made for any such award shall be referred to the Inventions and Contributions Board established under [Section 2457 of Title 42, *supra*]. Such Board shall accord to each such applicant an opportunity for hearing upon such application, and shall transmit to the Administrator its recommendation as to the terms of the award, if any, to be made to such applicant for such contribution." The statute then goes on to spell out the general factors which the Administrator shall take into account in determining the terms and conditions of any award, to provide for a release by the applicant of all claims to other compensation in return for an award, and to defer the effective date of an award exceeding $100,000 until the expiration of thirty calendar days of regular session of the Congress after receipt by the appropriate committees of the Congress of a "full and complete report" from the Administrator "concerning the amount and terms of, and the basis for,

---

**2.** We discuss this theory on the assumption that resort to the Board was not a prerequisite to suit. If it was, the claim would have arisen no later than early October 1967 when plaintiff was informed of the administrative denial. *Friedman v. United States*, 310 F.2d 381, 385–88, 159 Ct.Cl. 1, 8–13 (1962), *cert. denied*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

**3.** The *Monolith Portland* opinion distinguishes *Underwater Storage* as applying District of Columbia law, but the latter is written in general terms and can be read as applying general or federal law.

such proposed award." NASA has filled out these statutory provisions with regulations detailing the form of application and prescribing the Board's procedure. 14 C.F.R. §§ 1240.100–1240.106.

Without deciding whether or not the administrative remedy through this Board is mandatory,[4] we hold that, where a claimant does pursue that remedy, the bar on any suit in this court falls no later than six years after notification of final action on his application. By the time his request for agency relief is thus denied, he knows that (a) in his own mind at least, he has a claim upon the Government for compensation for the use of his ideas, (b) he can estimate the amount of the award to which he considers himself entitled, (c) the Government has formally and definitively rejected his claim (or considers it not as valuable as he does), and (d) by formally turning down his claim (in whole or in part), NASA deems itself free in ordinary course to use "his" ideas without making the payment he seeks. These are all the events fixing the liability of the United States, if there is any, and entitling the claimant to institute an action. Cf. Oceanic S. S. Co. v. United States, 165 Ct.Cl. 217, 225 (1964); Kirby v. United States, 201 Ct.Cl. 527, 532–33, 536 (1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); Boardman v. United States, 376 F.2d 895, 897–98, 180 Ct.Cl. 264, 268–69 (1967), cert. denied, 390 U.S. 953, 88 S.Ct. 1046, 19 L.Ed.2d 1145 (1968); Japanese War Notes Claimants Ass'n v. United States, 373 F.2d 356, 358, 358–59, 178 Ct.Cl. 630, 632, 634 cert. denied, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). This is equally true whether the claim be characterized as for a taking of private property, an action on an implied contract (cf. Padbloc Co. v. United States, 161 Ct.Cl. 369 (1963)), or a suit based on the NASA statute and regulations relating to scientific and technical inventions and contributions.

In the circumstances, to hold that, after choosing to follow through on the agency's proceeding, the claimant can delay suit for more than the statutory six years from the agency decision would be to permit an unnecessary and unjustified, even though only partial, prolongation of the limitations period at the plaintiff's own choice. Cf. Feldman v. United States, 181 F.Supp. 393, 400, 149 Ct.Cl. 22, 32 (1960); Friedman v. United States, 310 F.2d 381, 386–87, 159 Ct.Cl. 1, 9–11 (1962), cert. denied, Lipp v. U. S., 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). And since Congress expressly directed the establishment of the Inventions and Contributions Board and authorized its use to evaluate claims like plaintiff's it is fitting that, where a claimant utilizes the Board procedure, he not be permitted to postpone judicial scrutiny of the agency's determination beyond the normal span. The claimant, having chosen to seek relief through the Board, should not be allowed to act as if the Board did not exist. Whatever other consequences it may or may not have in court, a Board's decision purporting to pass on the whole of the applicant's claim should at least spring and ready the entire claim for judicial consideration. When the demand is against a private party, the owner of the alleged trade secret may not learn the fact or extent of the initial appropriation until after the original limitations period (i. e. starting from the appropriation). But for those who pursue NASA's administrative remedy, the final determination normally gives them all the information they need (if they do not already have it), plus an authoritative official notification that the agency will not pay the compensation sought. There is no adequate reason to wait longer or to consider the claim a "continuing" one which

---

4. As already indicated (fn. 2, supra), it is thoroughly settled that, if the administrative remedy is a prerequisite to suit, limitations begins to run from the Board's determination. See also Burich v. United States, 366 F.2d 984, 986–87, 177 Ct.Cl. 139, 143 (1966), cert. denied, 389 U.S. 885, 88 S.Ct. 152, 19 L.Ed.2d 182 (1967).

could be brought many years, even decades, after the Board's determination.

For these reasons, we grant defendant's motion for summary judgment on the basis that the suit was filed too late, and dismiss the petition.