Arthur J. JUNE, Jr., Plaintiff,

v.

SECRETARY OF the NAVY and Chief of Naval Personnel, Defendants.

Civ. No. 82–0344.

United States District Court,
M.D. Pennsylvania.

Dec. 23, 1982.

Peter G. Loftus, Scranton, Pa., for plaintiff.

Robert J. Nolan, Scranton, Pa., Vincent Garvey, Kathryn Ferger, Dept. of Justice, Washington, D.C., Donal M. Hill, U.S. Navy Office of Judge, Advoc. Gen., Alexandria, Va., for defendants.

MEMORANDUM AND ORDER

NEALON, Chief Judge.

On March 15, 1982, the plaintiff filed this action, alleging that the defendants violated his rights when they discharged him from the United States Navy

because he allegedly admitted to being a homosexual. The defendants have moved to dismiss, asserting, *inter alia,* that the action is barred by the statute of limitations. The court has decided to treat this motion as one for summary judgment [1] and, for the reasons set forth below, will grant the defendants' motion.

## FACTUAL BACKGROUND

According to the complaint, the plaintiff had been an enlisted man, first in the United States Air Force and then in the Navy, for nearly nineteen years prior to his discharge. The defendants concede that the plaintiff's record in both branches of the service had been good, and it is undisputed that the plaintiff's superiors consistently had rated him as above average or outstanding in nearly all areas of performance. In March 1975, the plaintiff applied for a transfer to the "Fleet Reserve," which essentially is a form of retirement. The application was approved, and the plaintiff's transfer was to become effective in early 1976 when his latest four-year enlistment period would expire.

On May 16, 1975, however, the plaintiff was given a general discharge on the ground of "unfitness," pursuant to a naval regulation which mandated the administrative separation of servicemen for having homosexual tendencies or engaging in homosexual acts. During an April 1975 investigation by naval authorities, the plaintiff was interrogated and, according to documents in the record, admitted to having had various homosexual relationships while in the service. Although the plaintiff waived his right to have his case considered by an administrative discharge board, he wrote to the Chief of Naval Personnel on April 25, 1975, asking that, in lieu of discharge, he be permitted to enter the Fleet Reserve a few months early and that he be released from active duty. This request apparently was rejected, because the plaintiff was given a general discharge for unfitness on May 16th, and his transfer to the Fleet Reserve was canceled.

One month after his discharge, the plaintiff wrote to various members of Congress, pleading with them to aid him in his quest for, "at minimum, severance pay." After making inquiries on the plaintiff's behalf, Senator Hugh Scott of Pennsylvania was advised that the plaintiff was not entitled to severance pay because of the type of discharge he had been given. In November 1975, the plaintiff wrote to the Secretary of the Navy explaining the circumstances of his discharge and asking for severance pay. Two months later, the plaintiff was advised that his case had been reviewed and that it was felt that his discharge "was in all respects correct and proper." The plaintiff was told that he could apply to the Board for Correction of Naval Records (BCNR) for additional consideration if he wished. A copy of the applicable forms and regulations was enclosed.

Apparently, the plaintiff did not apply to the BCNR for review and had no contact with the Navy for four years. In June 1980, however, he again wrote to the Secretary of the Navy, this time requesting an upgrade of his discharge so that he could obtain severance pay. Neither party has been able to produce this letter, but its existence is undisputed. It appears that the Secretary forwarded that letter to the BCNR, since that agency responded. The BCNR advised the plaintiff that his request for an upgraded discharge should be directed to the Discharge Review Board (DRB),

---

1. Although a court may treat a motion to dismiss as a motion for summary judgment on its own initiative by considering matters outside the pleadings, *see, e.g., Crown Central Petroleum Corp. v. Waldman,* 634 F.2d 127, 129 (3d Cir.1980), litigants should be accorded at least ten days notice that the court has elected to do so. *Id.; see, e.g., Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir.1980). In the present case, both parties have submitted many documents for the court to consider in ruling on the instant motion. Because the plaintiff has consistently cited many of these exhibits in the briefs he has submitted to the court, he must be regarded as having had sufficient notice that the court would elect to treat the motion as one for summary judgment. *See, e.g., Vuksta v. Bethlehem Steel Corp.,* 540 F.Supp. 1276, 1278 n. 2 (E.D.Pa.1982).

and enclosed the proper forms for making such an application. In August 1980, the plaintiff completed the application and enclosed a letter requesting that he be placed in retirement status or, "at bare minimum," that his discharge be upgraded from "general" to "honorable."

On April 17, 1981, the DRB advised the plaintiff that his discharge had been upgraded to an honorable one because the "policies regarding homosexuality under which [he] was discharged differ in material respect from those currently applicable." Specifically, the DRB observed that, pursuant to a memorandum issued by the Secretary of the Navy in 1978, servicemen discharged on the ground of homosexuality "should normally, in the absence of aggravating circumstances . . ., be given an honorable discharge." Upon learning of the DRB's decision to upgrade his discharge, the plaintiff submitted a claim for severance pay. The plaintiff was advised by the DRB that this request would have to be directed to the Navy Finance Center. The plaintiff wrote to this agency, which requested more information. After receiving no further response, the plaintiff asked his congressman to intervene. The congressman was advised by the Finance Center in September 1981 that the plaintiff was not entitled to *severance* pay because he had not been physically disabled at the time of the discharge. The congressman was also told, however, that the plaintiff would be entitled to *retirement* pay if his records were changed to show that he had been discharged on the expiration date of his enlistment, because he then would have accumulated the requisite 19 years and 6 months of service. This, according to the letter, could be decided only by the BCNR. Appropriate forms were provided for the plaintiff's use.

The plaintiff did not apply to the BCNR for relief. Instead, he filed this action, seeking a declaration that the regulations providing for the discharge of homosexuals are unconstitutional. In addition, the complaint includes demands for reinstatement, back pay, costs and attorney's fees. The plaintiff recently waived all claims for monetary relief exceeding $10,000.00 in light of the defendants' argument that the Court of Claims would otherwise have exclusive jurisdiction pursuant to the Tucker Act. *See generally* 28 U.S.C. §§ 1346(a)(2), 1491 (1976). The defendants now concede that the Tucker Act no longer presents a barrier to jurisdiction, but assert that the action is barred by the statute of limitations.

## DISCUSSION

The parties agree that this action is governed by a six-year statute of limitations. Since the action is, in effect, one against the United States, it is controlled by 28 U.S.C. § 2401 (1976), which provides for a six-year limitations period. Similarly, to the extent that the plaintiff may base jurisdiction upon 28 U.S.C. § 1331, *see Neal v. Secretary of the Navy,* 639 F.2d 1029, 1034 (3d Cir.1981); *Lord v. Lehman,* 540 F.Supp. 125, 126 (E.D.Pa.1982), the outer limit for commencing the action is a period of six years. *See Brewster v. Secretary of the Army,* 489 F.Supp. 85, 88 (E.D.N.Y.1980). *See generally Mosley v. Secretary of the Navy,* 522 F.Supp. 1165, 1167 n. 8 (E.D.Pa. 1981); 42 Pa.Cons.Stat.Ann. § 5527 (Purdon 1981).

Although it is clear that a six-year period controls this case, the parties vigorously disagree concerning the manner in which the time should be calculated. The defendants argue that the action is time barred because the plaintiff was discharged on May 16, 1975 and did not commence the action until March 15, 1982, almost seven years later. The plaintiff contends, however, that there should be a tolling of the limitations period for the time during which he pursued his administrative remedies. In addition, the plaintiff asserts that if he cannot benefit from a toll, the court should instead find that his cause of action did not accrue for limitations purposes until June 24, 1981 when the DRB's decision to upgrade his discharge became final.

The plaintiff's argument concerning the accrual of his cause of action must be rejected. A claim against the United

States ordinarily accrues "upon the occurrence of the final event necessary to complete the elements of the claim." *United States v. Sams,* 521 F.2d 421, 429 (3d Cir. 1975). A claim challenging an unconstitutional separation from the military accrues at the time of the discharge. *See, e.g., Mosley v. Secretary of the Navy,* 522 F.Supp. at 1167; *Brewster v. Secretary of the Army,* 489 F.Supp. at 87; *Mathis v. United States,* 391 F.2d 938, 938–39, 183 Ct.Cl. 145, *vacated for rehearing on other grounds,* 394 F.2d 519, 183 Ct.Cl. 145 (1968). There is no sound reason to hold that the DRB's decision to upgrade his discharge in 1981 makes this rule inapplicable. An agency decision "changing the nature, but not the date, of [a] discharge does not alter the time of accrual of the action." *Brewster v. Secretary of the Army,* 489 F.Supp. at 87. Although some courts have stated that "the cause of action does not accrue until the appropriate discharge review board" renders a decision on the serviceman's claim, *see, e.g., Walters v. Secretary of Defense,* 533 F.Supp. 1068, 1071 (D.D.C. 1982); *Kaiser v. Secretary of the Navy,* 525 F.Supp. 1226, 1229–30 (D.Colo.1981), these comments were made in cases in which the requested relief was an *upgrade* of the challenged discharge, not a declaration that the separation from the service was *void.* Although a cause of action for judicial review of the DRB's decision would appear to accrue upon the finality of its determination, it is significant that the plaintiff's complaint challenges only the original decision to discharge him. Hence, the DRB's April 17, 1981 decision is not properly before the court, *see Jaffee v. United States,* 592 F.2d 712, 719 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), and it should have no bearing on the accrual of the cause of action at bar.[2]

■ The plaintiff's claim that he should benefit from a toll for the period during which he pursued administrative relief also must be rejected. Although some courts have embraced a contrary view, *see, e.g., Von Hoffburg v. Alexander,* 615 F.2d 633, 641 n. 15 (5th Cir.1980); *Bard v. Seamans,* 507 F.2d 765, 769 (10th Cir.1974); *Martinez v. Brown,* 449 F.Supp. 207, 210 (N.D.Cal.1978), it has long been the law within this Circuit that servicemen are not required to look to the DRB or the BCNR before filing suit to overturn a discharge from the military. *See Nelson v. Miller,* 373 F.2d at 479 & nn. 18 & 20; *cf. Mosley v. Secretary of the Navy,* 522 F.Supp. at 1167 n. 5 (suit can be brought immediately after discharge, but court should wait until administrative remedies are exhausted before rendering a decision). Since a failure to exhaust will not mandate dismissal in cases of this kind, there is no reason to toll the statute of limitations. *Brewster v. Secretary of the Army,* 489 F.Supp. at 87; *Mathis v. United States,* 391 F.2d at 939. Tolling is appropriate only when the existence of administrative relief "prevents the pursuit or exercise" of judicial remedies. *E.g., Corson v. First Jersey Securities, Inc.,* 537 F.Supp. 1263, 1268 (D.N.J.1982).

■ The plaintiff relies upon dictum contained in *Mosley v. Secretary of the Navy,* 522 F.Supp. 1165 (E.D.Pa.1981), for the proposition that tolling is appropriate when a party has sought relief from military agencies like the DRB. In *Mosley,* the court stated that "the proper way to calculate the running of time is to start with the discharge, and toll for any period during which administrative remedies are pursued." *Id.* at 1167 n. 5. This court will decline to endorse this method of calculation because the *Mosley* opinion offers no rationale to support the conclusion that a toll applies, and it appears that the court was merely assuming the existence of a toll for purposes of argument. *Id.* at 1167 ("Even if limitations are tolled for the . . . period during which plaintiff exhausted his

---

2. Although the court expresses no opinion regarding the viability of any claim which might be brought concerning the DRB's decision, *see generally Neal v. Secretary of the Navy,* 639 F.2d at 1037, it must be noted that it is the BCNR, not the DRB, which has the power to consider the question whether a discharge should be revoked. *Nelson v. Miller,* 373 F.2d 474, 479 & n. 21 (3d Cir.), *cert. denied,* 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980 (1967).

administrative remedies, the statute ran for over eight years...."). It would be unfair to assume that the *Mosley* court, in dictum and without discussion, intended to depart from a substantial body of case law. *See, e.g., Brewster v. Secretary of the Army,* 489 F.Supp. at 87; *Bonen v. United States,* 666 F.2d 536, 539 (Ct.Cl.1981); *cert. denied,* —— U.S. ——, 102 S.Ct. 2273, 73 L.Ed.2d 1286 (1982); *Brundage v. United States,* 504 F.2d 1382, 1385 (Ct.Cl.1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975); *Mathis v. United States,* 391 F.2d at 939.[3]

It must be emphasized that a statute which limits the time for commencing a suit against the United States is not merely an instrument of repose. It is also one of the conditions imposed upon those plaintiffs who would benefit from a waiver of sovereign immunity. *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979). At the same time, it is a limitation upon the jurisdiction of the courts. Since it is Congress, not the judiciary, which has the power to waive sovereign immunity, the courts must be careful not to extend such a waiver beyond the scope intended by Congress. *Id.; see United States v. Sherwood,* 312 U.S. 584, 587–88, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941).

In enacting the legislation which led to the creation of discharge boards and bureaus for correction of records in each branch of the military, *see* 10 U.S.C. §§ 1552, 1553, Congress did not intend to affect the jurisdiction of the courts. *See Nelson v. Miller,* 373 F.2d at 479; *Ogden v. Zuckert,* 298 F.2d 312, 315 (D.C.Cir.1966). It is at least arguable that the jurisdiction of the courts would be expanded beyond the limits intended by Congress if an attempted exhaustion of remedies before these agencies were to give rise to a tolling of the statute of limitations—particularly since exhaustion is not a jurisdictional prerequisite to suit. *See, e.g., Nelson v. Miller,* 373 F.2d at 479 & nn. 18 & 20. It is unnecessary, however, to resolve this question definitively in the present case. Whatever might be said in favor of tolling the statute to benefit a plaintiff who has pursued administrative relief through proper agencies can have no applicability in the present case because the plaintiff made formal application for a remedy to the incorrect board. The DRB simply does not possess power to revoke, or even to recommend revocation of a discharge. 32 C.F.R. § 724.303(a)(2); *see* note 2 *supra.* The plaintiff's ignorance of this fact does not provide him with an extension of time. *See Mosley v. Secretary of the Navy,* 522 F.Supp. at 1167 n. 6. The court can find no evidence that Congress intended that the pursuit of relief through incorrect avenues would provide a tolling of the statute of limitations.

The plaintiff, however, argues that he must be regarded as having pursued a *proper* avenue of relief because he brought his grievance directly to the Secretary of the Navy. To support this contention, the plaintiff relies upon the Court of Claims' decision in *Brownfield v. United States,* 148 Ct.Cl. 411 (1962). In *Brownfield,* the court regarded a direct communication with the Secretary of the Air Force as sufficient for purposes of exhaustion despite the fact that the Air Force Board for Correction of Records had been bypassed. The court noted that the *Brownfield* plaintiff "took his grievance directly to the Secretary, in writing, on more than one occasion and ... *received a final and definitive answer* from the Secretary." *Id.* at 414–15 (emphasis added). The situation in *Brownfield,* then, is clearly distinguishable, for the plaintiff in the present case was not given a definitive response by the Secretary of the Navy. On the contrary, after being told that the Secretary felt that his discharge was proper, the plaintiff was advised that he could, if

---

**3.** The defendants argue that if the court were to toll the statute for the time during which the plaintiff sought relief from the DRB—from August 8, 1980 to April 17, 1981—the action would be barred anyway. The plaintiff meets this contention by observing that the DRB's decision did not become "final" until October 1981, when he was given a discharge certificate. Because the court concludes that there is no toll, it is unnecessary to resolve this question.

he wished, present his claim to the BCNR for additional consideration. Moreover, the plaintiff was given the applicable forms and regulations for this purpose. Four years later, when the plaintiff wrote again to the Secretary, he was again referred to another agency. Hence, it is clear that *Brownfield* is inapposite, and the plaintiff cannot rely upon it for his argument that he pursued proper avenues to obtain relief. *Accord, Bard v. Seamans,* 507 F.2d at 769 n. 9.[4]

Although this court concludes that the plaintiff cannot benefit from a toll of the statute of limitations, a discussion of the Navy's handling of this matter appears to be in order because he urges emphatically that the timeliness problems in this case were brought about by the defendants' conduct. The plaintiff relies heavily upon the fact that he actively pursued relief through many agencies, including the DRB, the BCNR, the Navy Finance Center, the Secretary and various congressmen. *See* Plaintiff's Answer to Defendants' Supplemental Memorandum at 6–7, Document No. 13 of the Record. He argues that his letters were "kicked" from agency to agency and that he was "jockied" back and forth between these various boards. *Id.* at 7, 9. In short, the plaintiff claims, he "got a run around." *Id.* at 6. After carefully reviewing the documents submitted in connection with this motion, and having given the plaintiff the benefit of all favorable inferences which can be drawn from them, the court concludes that the plaintiff's attempt to blame the Navy for his timeliness problem must fail. The plaintiff would have this court believe that he actively sought reinstatement to his position during the many years that he corresponded with naval agencies, and that an intransigent Navy ignored his pleas, relegating him from one bureaucrat to another. The record simply

does not support this version of the relevant events.

The plaintiff's initial attempts to seek relief, addressed to various congressmen, concerned "severance pay," which, of course, is inconsistent with the plaintiff's present request for reinstatement. Indeed, in one letter, the plaintiff stated, "I do not now desire to remain in the military service to complete my time, but gladly leave it. However, I do not feel that to ask for severence [sic] pay in the amount of one months [sic] pay for each year I have served is to [sic] much to ask." Plaintiff's Letter to Senator Hugh Scott, Defendants' Exhibit E, pp. 100–01, attached to Document No. 8 of the Record. Notably, Senator Scott learned that there were "no provisions" for severance pay applicable to the plaintiff's situation. *See* Navy's Letter to Senator Hugh Scott, *id.* at 97–98. Nevertheless, in his first letter to the Secretary of the Navy, the plaintiff asked for this form of relief. *See* Letter to Secretary of the Navy, *id.* at 96–97. Significantly, although the plaintiff told the Secretary that he felt that his discharge was unjustified, he did not ask to be reinstated. *Id.* The discharge was nonetheless reviewed, and upon its affirmance, the plaintiff was invited to apply to the BCNR for further consideration.

The plaintiff could have applied to the BCNR for review at this point, asking for reinstatement, but he did not do so. In addition, it must be remembered that he could have instituted suit as well. Instead, he waited for approximately four and one-half years, and then sent a second letter to the Secretary. In this letter, the plaintiff apparently asked for an upgrade of his discharge, and was referred to the DRB. *See* Letter to Plaintiff from BCNR, attached to Plaintiff's Memorandum in Opposition to Defendants' Motion, Document No. 7 of the

---

**4.** The plaintiff urges the court to adopt his view that "[b]y writing to the Secretary of the Navy he alleviated the necessity of attempting to identify the proper board and placed this requirement in the hands of the Secretary." Plaintiff's Answer to Defendants' Supplemental Memorandum at 10. The plaintiff cannot ex-

pect this court to hold that by writing a letter to the Secretary, servicemen can bypass the very specific forms and regulations governing applications to these agencies and place the burden upon the Navy. *See, e.g.,* 32 C.F.R. §§ 723.3(a)(1)–(3), 724.113 & Appendix D.

Record.[5] The Navy's response was entirely proper, since it is the DRB which considers requests for upgrading of discharges.

The plaintiff then made formal application to the DRB for an upgrade of his discharge. This application is significant, for it is the first time that the plaintiff can be said to have requested reinstatement. Although an upgrade request would be inconsistent with a claim for reinstatement, the plaintiff also requested "Transfer to Fleet Reserve Vice [*i.e.*, in lieu of] Discharge." Giving the plaintiff the benefit of a favorable inference here, the court will conclude that the transfer request was fairly presented as a demand for revocation of the discharge.

The flaw in the plaintiff's presentation of the facts involved in this case is that he cannot point to any document in the record demonstrating that he was advised to apply to the DRB by any official who was aware that the plaintiff was demanding reinstatement. If the plaintiff could point to any evidence tending to demonstrate this, he would be on firmer ground with respect to his contention that he was given a "runaround," for it is well settled that the DRB cannot revoke a discharge. *See* note 2 *supra*. Absent such proof, the court can only conclude that the plaintiff misunderstood his remedy. Although such a mistake is unfortunate, it is not a ground for tolling the statute of limitations.[6]

An appropriate Order will enter.

## ORDER

In accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT the defendants' motion for summary judgment is granted. The Clerk of Court shall close this case.

---

5. As noted previously, *see supra,* neither party has been able to produce this letter. The plaintiff notes that the Secretary apparently referred the letter to the BCNR because that agency responded to the plaintiff. *The* BCNR's response states that the plaintiff's request for an *upgrade* of his discharge should be directed to the DRB. There is no reference to a request for *reinstatement.* If there had been such a request, it would have been the BCNR's function to consider it—but only if the plaintiff had made formal application. *See* 32 C.F.R. § 723.-3(a)(1).

6. To the extent that the doctrine of laches applies, the action is barred. Since the statute of limitations has run, inexcusable delay and prejudice to the defendants are presumed. *See, e.g., Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1259–60 (3d Cir.1974). Although the plaintiff attempts to avoid this result by arguing that the delay was caused by the defendants' conduct, the court is not convinced that there is any genuine issue regarding this point. *See* discussion in text, *supra*.