**Rufus R. McCURDY, Jr., Appellant,**

v.

**Eugene M. ZUCKERT, Secretary of the Air Force, Appellee.**

**No. 23143.**

United States Court of Appeals
Fifth Circuit.

April 14, 1966.

Rehearing Denied May 6, 1966.

Edward R. Kirkland, Orlando, Fla., for appellant.

Charles S. Carrere, Asst. U. S. Atty., Tampa, E. J. Salcines, Jr., Asst. U. S. Atty., Tampa, Fla., Edward F. Boardman, U. S. Atty., for appellee.

Before RIVES and GEWIN, Circuit Judges, and ALLGOOD, District Judge.

RIVES, Circuit Judge:

This appeal is from the denial of Sergeant McCurdy's motion that the Secretary be temporarily enjoined from discharging him from the Air Force. Pur-

suant to Air Force Regulation No. 39–17 relating to the "Discharge of Airmen Because of Unfitness," a Board of Officers convened at McCoy Air Force Base, Florida, which recommended:

"That Senior Master Sergeant Rufus R. McCurdy, Jr. be discharged from the service prior to the expiration of his term of service, under the provisions of Air Force Regulation 39–17, because of unfitness, and be furnished with a General Discharge Certificate."

The Staff Judge Advocate of McCoy Air Force Base has approved the recommendation of the Board, and all that remains to accomplish the final discharge of Sergeant McCurdy from the Air Force is to issue the Certificate of Discharge which can be done locally at McCoy Air Force Base. Such action has been stayed until the merits of this appeal can be determined.

Sergeant McCurdy's contentions as set forth in his amended complaint in the district court are that the convening of the Board under Air Force Regulation 39–17 was in lieu of disciplinary proceedings and thus contrary to the proscription of Article 1 of Section A of that Regulation that, "Commanders will not take action under this Regulation in lieu of taking disciplinary action."

Sergeant McCurdy had completed about nineteen years' service in the Air Force and would have been eligible for retirement in approximately another year, with a monthly retirement of $240.00. If he is discharged prior to completing twenty years' service, he will lose his retirement benefits. It is the loss of those retirement benefits and the award of a General Discharge Certificate rather than an Honorable Discharge which give rise to McCurdy's claim of irreparable damage. His present enlistment is not scheduled to expire until November 1966, which will be after the twenty-year period required for retirement.

■ Court-martial proceedings are subject to due process requirements.[1] It is conceded that if Sergeant McCurdy were tried by court-martial he would have the right of confrontation with the witnesses against him and could subpoena witnesses in his behalf. It was further conceded in the district court that the witnesses against Sergeant McCurdy probably would not be produced before a court-martial.

In all other respects the proceedings before the Board evidence a commendably scrupulous regard for Sergeant McCurdy's constitutional rights. He was ably represented by both military and civilian counsel. After a full hearing, the Board found as the basis of its Recommendation that:

"1. On 10 April 1965, sometime between the hours of 1000 and 1900, Sgt McCurdy did, at 5560 Lido Street, Orlando, Florida, commit lewd and lascivious acts, indecent exposure, and indecent acts with Melody Anne Young and Kelly Jean McCurdy.

"2. That the evidence did not support a finding of chronic alcoholism and that Sgt McCurdy's military assignments were adequately accomplished, although there was evidence of excessive alcohol intake.

"3. That Sgt McCurdy did have a character and behavior disorder, diagnosed at USAF Hospital, Elgin Air Force Base, Florida, on 20 May 1965, as passive aggressive personality, chronic, moderate."

The two children involved were Sergeant McCurdy's eleven-year-old stepdaughter and his seven-year-old daughter. On April 10, 1965, when it is alleged that the lewd, lascivious and indecent acts were committed, the two little girls reported to their mother, Sergeant Mc-

1. Burns v. Wilson, 1953, 346 U.S. 137, 142, 143, 73 S.Ct. 1045, 97 L.Ed. 1508; compare Greene v. McElroy, 1959, 360 U.S. 474, 497, 498, 79 S.Ct. 1400, 3 L. Ed.2d 1377; Gibbs v. Blackwell, 5 Cir. 1965, 354 F.2d 469.

Curdy's wife, as soon as she returned home from work. She consulted with a chaplain, and upon his advice reported to the military authorities. Sworn statements were executed by the wife and by another step-daughter, now of college age, who attested to a claimed incident of McCurdy's earlier indecent fondling of her person.

Thereafter, Sergeant McCurdy and his wife became reconciled. On the application for temporary injunction, Captain Gaylon K. Kintner, the Staff Judge Advocate, testified as to why court-martial proceedings were not instituted:

"Essentially, the reason the court-martial was not instituted in this case was, number one, the fact that we would have to require Sergeant McCurdy's children to testify against him. As to one allegation, the statute of limitations precluded a charge in the specification. Secondly, the children were under his parental influence for a long period of time. We didn't know how they would testify. We didn't know how they would be influenced. I didn't feel as if Sergeant McCurdy should be subjected to a harassing charge or specification or any number of them. The court-martial is a disciplinary action. It can subject the individual to confinement, dishonorable discharge, and it is certainly not a pleasant thing even to be charged. We also had our evidence regarding evidence of a fresh complaint which came from Mrs. McCurdy. Mrs. McCurdy refused to cooperate with us. We have what we call Article 32 Investigation which must preceed (sic) the convening of a General Court-Martial. We have no subpoena power in this investigation. We were told by Mrs. McCurdy that the children would not be permitted to testify during this investigation. Thus, doing this investigation we would have to rely upon heresay (sic) evidence which, of course, we cannot substantiate factually grounds for discharges, but the probable most important factor was the fact that Mrs. McCurdy did not want her children to testify against him, that she and Sergeant McCurdy had reconciled and that the children were living under parental control of the would be accused, and we could not expect them to testify as they initially complained against their father in Court. In other words, I didn't feel that we could prove beyond a reasonable doubt in a Criminal Trial Sergeant McCurdy's guilt."

The district court rendered an able and full opinion which we do not find reported. It denied the Secretary's motion to dismiss for want of jurisdiction, denied McCurdy's application for temporary injunction, and retained jurisdiction until McCurdy had an opportunity to have his case heard by the Air Force Board for Correction of Military Records.

McCurdy carefully restricted his notice of appeal to that part of the judgment which denied the temporary injunction. We must, nonetheless, inquire into the question of the district court's jurisdiction.

In retaining jurisdiction until McCurdy has an opportunity to have his case heard by the Air Force Board for Correction of Military Records, the district court followed the procedure outlined in Covington v. Schwartz, N.D.Calif.1964, 230 F. Supp. 249, as modified and affirmed by the Ninth Circuit, 1965, 341 F.2d 537. That is the only case to which we have been cited where a federal court stayed a discharge from the armed services. One of the grounds on which such unusual intervention was justified was that, "Irrespective of the government's recent assurance that the appellee would be reinstated if he prevails upon review of his discharge, the injury and the stigma attached to an *undesirable discharge* are clear." (Emphasis added.) 341 F.2d at 538. That is not at all true as to the type of discharge here involved, a general discharge. The types of discharge from the armed services now in use are described by the Subcommittee on Constitutional

Rights of the Committee on the Judiciary, United States Senate [2] as follows:

"At the present time there are five types of discharge from the armed services, namely, the honorable, general, undesirable, bad conduct, and dishonorable. Both the honorable and the general discharge are considered to be 'under honorable conditions'; in either case, the veteran is fully entitled to veterans' benefits. However, according to some of the testimony, the general discharge tends to create a stigma for its recipient. The undesirable discharge is issued administratively and will bar veterans' benefits if issued for one of the following reasons, unless the individual was insane: (a) to escape trial by general court-martial; (b) willful and persistent misconduct, an offense involving moral turpitude, or mutiny or spying; or (c) overt act of homosexuality. The bad conduct discharge is a punitive discharge, which, under the Uniform Code, can only be given by a special or general court-martial. At the present time its use in the Army, unlike the other services, is limited in practice to the general court-martial. When imposed as part of the sentence of a special court-martial, a bad conduct discharge bars veterans' benefits under the same circumstances where an undesirable discharge would bar such benefits. If imposed by the sentence of a general court-martial, a bad conduct discharge is always a bar to veterans' benefits under the provisions of 38 U.S.C.A. 3103. A dishonorable discharge can only be imposed by a general court-martial, and it is always a bar to veterans' benefits."

The Subcommittee further expressed the view [3] that:

"Because of the effects of the undesirable discharge, and to a much lesser extent of the general discharge, the subcommitte considers it essential that the procedures for issuing such discharges provide adequate protection for the constitutional rights of military personnel."

It may be that the stigma attached to an undesirable discharge, as held in Covington v. Schwartz, supra, is so deep-dyed as to be irremovable and thus results in irreparable injury.[4] However, we can perceive of no good reason why the lesser stigma attached to a general discharge should be considered as so irreparable. Indeed the Supreme Court apparently held to the contrary in Beard v. Stahr, Secretary of the Army, 1962, 370 U.S. 41, 82 S.Ct. 1105, 8 L.Ed. 2d 321.

In the present case the Secretary argues that 10 U.S.Code, section 1553 and the orders implementing that section contemplate a mandatory hearing upon Sergeant McCurdy's request *after* discharge as a result of which any possible injury could be repaired. As argued in the Secretary's brief:

"The remedies available to the appellant, should he, arguendo, ultimately prevail on the merits, amount to complete retroactive restoration; he could hardly ask for more. In fact, if he is discharged now, and later prevails, he would be entitled to (1) an honorable discharge and (2) all payments to which he would have been entitled had he remained in the service until properly discharged, including pay and allowances as a non-commissioned officer and any retirement benefits to which he would have become entitled had he remained in the service. In addition, the Secretary of the Air Force would have authority to reenlist him to his former grade without regard to his qualifications for reenlistment. A more complete retroactive restoration can hardly be imagined."

2. In the Summary of Report of Hearings on Constitutional Rights of Military Personnel, pursuant to S.Res. 58, 88th Congress, 1st Session, p. 1.

3. On page 2 of the Summary of Report of Hearings referred to in n. 2, supra.

4. See, however, to the contrary, Michaelson v. Herren, 2 Cir. 1957, 242 F.2d 693.

That being true, the district court lacked "primary jurisdiction." [5] As held in Beard v. Stahr, supra, the action is premature. The judgment of the district court is therefore vacated and the cause is remanded with directions to dismiss the complaint.[6]

Vacated.

---

5. See Davis Administrative Law, Vol. 3, § 19.01.

6. While Sergeant McCurdy may ultimately have recourse to the courts to protect his constitutional rights, the courts will not interfere with the disciplinary or executive functions of the armed services. The importance of some such accommodation is shown by the testimony upon the hearings referred to in footnote 2, supra, of Maj. Gen. A. M. Kuhfeld, Judge Advocate General of the Air Force, as follows:

"Now the area, as I see it, that the chairman is getting into is, supposing one of these individuals said: 'I would rather be tried by court-martial.' Should he be entitled to be tried by court-martial? I would say not.

"I would say that the decision as to whether he should be tried by court-martial should be left to the military authorities. Now why do I say that?

"The cases in which the man is not tried by court-martial—let us take a child molestation case, for instance—you will have a situation where a youngster 5 or 6 or 7 years old—one case that I am thinking about in particular, where the youngster made a statement identifying the individual as the person who had taken indecent liberties with her, a little girl. The individual made a statement himself admitting that he had taken these indecent liberties.

"Then he learns that a psychiatrist, a chaplain the little girl's parents have said: This will irreparably hurt this little girl if she is required to go on the witness stand and testify to these things that happened.'

"Now in that kind of a case I think the commander should be supported 100 percent in his determination that we have got to rid the service of this individual, but we do not have to sacrifice this little girl in order to do it, and we will use the little girl's statement and we will use his statement, the respondent's statement, to show what he did, and then eliminate him, despite the fact that he is asking for a court-martial, with full knowledge that we would not be inhuman enough to put the little girl on the witness stand.

"I think you have got to consider all of those factors, Mr. Chairman, when you go into considering a problem of: Can this man force you to give him a court-martial?"