Mark P. **CHILCOTT**, Plaintiff, Appellee,

v.

Verne **ORR**, Secretary of the United States Air Force, Defendant, Appellant.

No. 84–1178.

United States Court of Appeals, First Circuit.

Argued Sept. 10, 1984.
Decided Oct. 24, 1984.

---

Al J. Daniel, Jr., Civ. Div., Dept. of Justice, Washington, D.C., W. Stephen Thayer, III, U.S. Atty., Concord, N.H., Richard K. Willard, Acting Asst. Atty. Gen., and Anthony J. Steinmeyer, Civ. Div., Dept. of Justice, Washington, D.C., were on the brief, for defendant, appellant.

John L. Ahlgren, Concord, N.H., for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and SKELTON,* Senior Circuit Judge.

SKELTON, Senior Circuit Judge.

This is an appeal by the Secretary of the Air Force challenging a preliminary injunction granted by the District Court for the District of New Hampshire in favor of appellee Mark P. Chilcott. We reverse and vacate the decision of the District Court.

## I. BACKGROUND

Appellee Chilcott is an enlisted airman who worked on sensitive computer systems for medium range bombers at Pease Air Force Base, New Hampshire. On April 20, 1983, while on leave, Chilcott was arrested for selling a small quantity of L.S.D. to an undercover police officer at a rock concert in Providence, Rhode Island. The substance sold to the agent was confirmed to be L.S.D. by the police toxicology lab, although Chilcott's urinalysis test was negative.

Chilcott was released to the Air Force on or about April 22, 1983, and his unit commander ordered an investigation after receiving the arrest report from the police. A Rhode Island felony charge was initially filed against him, but this was later changed to a misdemeanor charge of "possession of a habit forming drug without a prescription." On September 2, 1983, Chilcott pled not guilty to the charge, with the understanding that the case would remain on the court docket for one year, at the end of which period the record would be expunged.

On November 14, 1983, after the staff Judge Advocate's office had obtained all pertinent records concerning Chilcott's arrest and prosecution, his unit commander notified him by letter that he was recommending that Chilcott be discharged from the Air Force for misconduct related to drug abuse. The letter advised plaintiff that (1) the discharge was proposed under Air Force Regulation 39–10, Chap. 5, Sec-

* Of the Federal Circuit, sitting by designation.

tion H, ¶ 5–49; (2) the discharge could be either honorable or general, but that he was recommending a general discharge; (3) plaintiff could obtain civilian counsel at his own expense and that an appointment had been made with military counsel for him; and (4) that plaintiff could submit any statements he wished to be considered by the base commander.

A copy of the unit commander's discharge recommendation was attached to the notice sent to Chilcott. It stated that the reasons for the proposed discharge were Chilcott's arrest for selling L.S.D., the investigation report detailing his involvement with the sale of L.S.D., and his court case. Chilcott responded by written statement, denying the charges and requesting a hearing where he could confront the witnesses.

## II. AIR FORCE PROCEDURES

Air Force regulations in effect between October 1, 1982, and October 1, 1983, (during which period Chilcott was arrested) required a board hearing prior to the administrative discharge of an airman. At this hearing the airman could present evidence and cross-examine the Air Force's witnesses. However, effective October 1, 1983, this provision was deleted and the administrative discharge procedures was amended to conform essentially to the procedure in effect prior to October 1, 1982. Under the newer procedures, an airman receives notification of the proposed discharge, indicating the character of discharge recommended. The airman may retain counsel and submit rebuttal statements, but no hearing is conducted at this point. A commander then considers the recommendation and rebuttal statements, and may approve the proposed discharge only if it is based upon a preponderance of the evidence.

If the discharge is approved, the airman has recourse to two Air Force administrative boards. The Air Force Discharge Review Board reviews applications for relief by airmen who were discharged administratively. It has the authority to change the

discharge or to issue a new discharge according to its findings, although it cannot revoke a discharge. An applicant for relief has an absolute right to a hearing before this board, and may be represented by counsel and present witnesses. The Secretary of the Air Force may review the board's decisions, but must make his own written findings and conclusions, unless those of the board are adopted.

The Air Force Board for Correction of Military Records considers applications for relief and makes recommendations to the Secretary. A hearing before this board is discretionary. If a hearing is granted, the applicant may appear with counsel and present witnesses. On the board's recommendation, the Secretary may reinstate a discharged applicant and award back pay and other pecuniary benefits.

## III. PROCEEDINGS AND DISPOSITION BELOW

Chilcott filed a petition in the District Court against the Secretary of the Air Force and his base commander on December 22, 1983, seeking damages, an injunction, a temporary restraining order and declaratory relief to prevent his discharge from the Air Force. The motion for a temporary restraining order was treated as one for a preliminary injunction, and an evidentiary hearing was held before the District Court on December 28, 1983. A preliminary injunction against the defendants was issued on January 3, 1984. The District Court found that Chilcott satisfied all of the criteria for the issuance of an injunction, and also stated that there appeared to be a serious constitutional question because of an alleged retroactive application of Air Force regulations and because there was no provision for a pre-discharge hearing. Chilcott has been relieved of his regular duties by the Air Force and has been reassigned as a bay orderly pending this appeal.

## IV. ANALYSIS

The courts historically have been reluctant to interject themselves into the internal affairs of the armed forces. Interference by the judiciary with the administration of the military would undermine this nation's ability to maintain a disciplined and ready fighting force. As the Supreme Court has stated,

... judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953).

10 U.S.C. § 1169 (1982) gives the Secretary of the Air Force the authority to prescribe the conditions and procedures under which an airman may be discharged before his term of service expires. Congress has not set any limitation upon the Secretary's authority to prescribe these conditions and procedures. It would be singularly inappropriate for the courts to dictate the procedures required in these circumstances in light of the special nature of the military. The circumstances would have to be exceptional to warrant such an intrusion.

A. *Criteria for granting a preliminary injunction.*

In the case of *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the Supreme Court considered whether a district court had authority to grant interim injunctive relief to a civilian federal probationary employee pending an administrative appeal to the Civil Service Commission. The employee had been notified that she would be discharged on a certain date from her position with the General Services Administration. The Court held that while the district courts were not wholly prevent-

ed from granting injunctive relief in such cases, the employee would be required to make a stronger showing of irreparable harm than in other cases before relief would be granted. The Court also acknowledged the four criteria to be considered when reviewing an application for a preliminary injunction: (1) strong showing of likelihood of success on the merits; (2) irreparable harm to plaintiff if relief is not granted; (3) lack of harm to the opposing party; and (4) consideration of the public interest.

While we recognize that *Sampson* dealt with the rights of civilian probationary employees, not servicemen, we nevertheless think that the rule in *Sampson* should be applied to military personnel. Servicemen are similar to civilian probationary employees in that "cause" is not a statutory criterion for their dismissal. *See* 5 U.S.C. § 7501; 10 U.S.C. 1169. Congress, in allowing servicemen to be discharged upon such terms as the Secretary should prescribe, clearly indicated that military discharge proceedings should be enjoined only in exceptional circumstances. In view of the strong judicial policy against interfering with the internal affairs of the armed forces, we will apply the more stringent test of *Sampson* to applications for preliminary injunctions by military personnel.

B. *Irreparable harm.*

Chilcott contends that he will be irreparably harmed if he receives a general discharge under honorable conditions. He argues that anything less than an honorable discharge will stigmatize him and jeopardize his future employment opportunities. Of course, post-discharge remedies are available in the Air Force that could result in his discharge being upgraded to honorable, if the Air Force Discharge Review Board determines that the general discharge was improper. The only conceivable harm that Chilcott could suffer is the damage to his reputation and the stigma that would occur between the time of his discharge and the decision of the Discharge Review Board. The question we are faced with is whether the harm suffered in this interim period is so great as to justify an interference with Air Force procedures.

The Fifth Circuit considered this question in the case of *McCurdy v. Zuckert*, 359 F.2d 491 (5th Cir.1966), *cert. denied*, 385 U.S. 903, 87 S.Ct. 212, 17 L.Ed.2d 133 (1966). In that case the plaintiff sought an injunction to prevent his discharge for unfitness one year before he was eligible for retirement. He contended that loss of his retirement benefits and the issuance of a general discharge under honorable conditions would cause him irreparable harm. The Court held that post-discharge remedies would wholly repair any injury he received if he prevailed. It reasoned that the stigma attached to a general discharge was less than that arising from a dishonorable discharge, and should not be considered irreparable. It cited the Supreme Court case of *Beard v. Stahr*, 370 U.S. 41, 82 S.Ct. 1105, 8 L.Ed.2d 321 (1962) (*per curiam*) as authority for its holding.

In *Beard*, an army officer sought to enjoin the Army from giving him a general discharge. The district court granted summary judgment against the officer. On appeal, the Supreme Court vacated the judgment and remanded with directions to dismiss the complaint. It held that the action was premature because the Secretary had not yet exercised his discretionary authority to remove the officer. It further stated that if he was removed, "the Court is satisfied that adequate procedures for seeking redress will be open to him." *Beard*, 370 U.S. at 42, 82 S.Ct. at 1105. Apparently, the Supreme Court was not of the opinion that a general discharge was an injury of such a severe nature as to justify an interruption of military administrative procedures with an injunction.

Both *Beard* and *McCurdy* were decided on jurisdictional grounds, with the decisions below being vacated because the actions were premature. This Court, in the case of *Pauls v. Secretary of the Air Force*, 457 F.2d 294 (1972), expressly declined to decide a military injunction case

on the basis of subject matter jurisdiction. In that case, two Air Force officers attempted to enjoin the Air Force from releasing them from active duty. We reviewed the merits of the trial court's order granting an injunction and decided that while a trial court has wide discretion to grant an injunction, in that case it erred in doing so. We do not read *Beard* and *McCurdy* as prohibiting injunctive relief in all military discharge cases. If the plaintiff can make the strong showing required by *Sampson,* he may be entitled to relief. However, we find *Beard* and *McCurdy* persuasive on the point that the prospect of a general discharge under honorable conditions is not an injury of sufficient magnitude to warrant an injunction.

### C. *Constitutional issues.*

■ Chilcott also contends, and the district court intimated, that there are serious constitutional defects in a procedure that calls for a discharge without a hearing. *Pauls* indicated that judicial intervention into internal military affairs may be appropriate when there is an allegation of the deprivation of a constitutional right. However, we are unpersuaded that a military discharge without the benefit of a pre-disclosure, trial type hearing amounts to a denial of due process. In the case of *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the Supreme Court held that there was no violation of the due process clause of the fifth amendment in failing to provide a trial-type hearing before, rather than after, the discharge of a non-probationary federal civilian employee. The procedures at issue in that case provided for written notice prior to removal, and made available to the employee the material upon which the proposed removal was based. The employee then had an opportunity to appear before the deciding official to answer the charges against him. Appeal from an adverse deci-

sion to the Civil Service Commission was allowed, where the employee was entitled to a trial-type hearing. If successful, the employee could be reinstated with back pay. The procedures afforded Chilcott in this case were similar to those approved in *Arnett.* If they comport with due process requirements for civilian employees, who can only be removed for cause, then they should be sufficient for military personnel, who serve at the discretion of the Secretary. *See also Tennessee v. Dunlap,* 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, 92 S.Ct. 2701 (1972). All that is necessary is for the Air Force to follow its own regulations, which it has done in this case.[1]

■ The District Court was also of the opinion that there was a constitutional problem with the "retroactive" application of regulations by the Air Force. This conclusion is erroneous. The regulations in force at the time administrative proceedings take place govern, not those in effect at some earlier time when the events giving rise to the action occurred. *See Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). The Supreme Court has made it clear that procedural changes in the law are not violative of the Ex Post Facto Clause of the Constitution, even when the change affects such weighty matters as the application of the death penalty. *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898). There was no violation of the constitution when the Air Force applied its new procedures which deleted the right to a pre-discharge hearing.

Chilcott makes several other contentions which are similarly without merit. We see no need to discuss them. Following the precedent of *Pauls,* we *reverse and vacate*

---

1. Chilcott has contended that the Air Force failed to follow its own regulations in that it did not act promptly to recommend discharge when it learned of his arrest. However, the applicable regulation, AFR 39–10 ¶¶ 6–53 and 6–54 only applies when the airman is subject to discharge because of a "civilian *conviction.*" Chilcott's recommended discharge was not based upon a civilian conviction, so the constructive waiver provision of AFR 39–10 does not apply.

the order of the District Court which granted a preliminary injunction.