### Edward WILBURN

v.

### John DALTON, Secretary of the Navy.

### Civ. A. No. 93–4933.

United States District Court,
E.D. Pennsylvania.

Oct. 5, 1993.

---

Earl G. Kauffman, Philadelphia, PA, for Edward W. Wilburn.

Linda L. Bocchino, Asst. U.S. Atty., James G. Sheehan, Asst. U.S. Atty., Civ. Div., Philadelphia, PA, for John H. Dalton.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff, Edward Wilburn, is an Aviation Technician, Second Class in the United States Navy. On September 14, 1993, plaintiff petitioned this Court for a temporary restraining order to prevent the Navy from separating him with a general discharge under honorable conditions after 12 years of service before he could appeal the decision to the Board for Correction of Naval Records ("BCNR"). This Court granted the temporary restraining order and held a preliminary injunction hearing on September 24, 1993.[1] The following are the Court's Findings of Fact and Conclusions of Law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

On June 1, 1990, while assigned to duty at the Naval Air Station in Sigonella, Italy,

Navy security personnel apprehended plaintiff for driving under the influence of alcohol. Plaintiff waived his right to demand trial by court-martial for this offense. Instead he proceeded to a "captain's mast," an informal nonjudicial proceeding under Article XV of the Uniform Code of Military Justice, where limited punishments for certain offenses may be awarded after a hearing before the commanding officer. On June 20, 1990, plaintiff received a nonjudicial punishment of 45 days of restricted duty, forfeiture of half his monthly pay for two months, and a reduction in his rank for this offense.

Several years later, on April 13, 1993, plaintiff elected a captain's mast rather than a trial by court-martial for charges of six incidents of indecent exposure in the presence of six different women, two of whom were Petty Officers Marilyn Prete ("Prete") and Sheila Doane ("Doane"). Plaintiff was also charged with six specifications of disorderly conduct, each of which related to the alleged incidents of indecent exposure; two specifications of indecent assault on Prete and another woman; one specification of solicitation of prostitution of Prete and one specification of wrongfully communicating a threat to Prete. After interrogating Prete, Doane and plaintiff, the commanding officer at the captain's mast found plaintiff responsible for an indecent assault of Prete and disorderly conduct witnessed by Doane and Prete. Plaintiff received, as nonjudicial punishment, a verbal reprimand and 15 days of restricted duty for these offenses. The 13 remaining specifications were dismissed.

On April 22, 1993, before his punishment period of restricted duty expired, plaintiff received a notification letter from his commanding officer stating that he was being considered for an administrative discharge from the Navy by reason of misconduct due to "commission of a serious offense." This letter notified plaintiff that the decision to consider his discharge was based on his nonjudicial punishments for drunk driving in 1990 and the indecent assault of Prete in 1993.

---

1. The temporary restraining order was extended to October 8, 1993 to allow the Navy to retrieve the records of certain nonjudicial proceedings against plaintiff from Sigonella, Italy and to allow both parties to brief the court on the issue of irreparable harm.

Plaintiff elected to have another nonjudicial body, the Administrative Discharge Board (the "Board"), hear the specifications against him concerning his possible discharge. The Board, consisting of a lieutenant commander and two lieutenants, convened to hear plaintiff's case on July 7, 1993. Plaintiff was represented at the Board hearing by Navy counsel, who objected to the introduction of Prete's sworn written statement in support of the indecent assault charge. Plaintiff's counsel argued that since the determination of what happened depended on whether the Board believed plaintiff or Prete, her live testimony was critical. After ruling that plaintiff's counsel had failed to follow proper procedures for requesting the production of a witness, the senior member of the Board found Prete unavailable, as she had been transferred to the naval base in Norfolk, Virginia on June 1, 1993. The Board then proceeded with the hearing without her.

Plaintiff's counsel also objected to the introduction of documents detailing the alleged indecent exposure incidents, on the ground of undue prejudice. These documents consisted of numerous reports filed by Navy investigators and written statements by several women, some of whom had testified or submitted statements in the 1993 captain's mast. The Board overruled the objection and admitted these documents into evidence. Based on its consideration of "all witnesses and documentary evidence presented," the Board found by a vote of 3 to 0 that the plaintiff committed misconduct due to the commission of a serious offense. It recommended that plaintiff be separated from the Navy with a general discharge under honorable conditions. The "serious offense" presumably was the indecent assault of Prete, one of the offenses with which he was charged in the notification letter he received on April 22, 1993. The Bureau of Naval Personnel approved the Board's recommendation for separation and the characterization of plaintiff's discharge.

Plaintiff has not yet exhausted his administrative remedies, as he has the right to appeal his discharge to the BCNR. The BCNR has the authority to "correct an error or remove an injustice," order that plaintiff be awarded lost pay, and order that he be reenlisted or reappointed to his prior grade. 10 U.S.C. § 1552(a)(1), (c), (d). The BCNR is authorized to consider claims of constitutional, statutory and regulatory violations. 32 C.F.R. § 723.3(e)(5). If the BCNR grants a hearing, the servicemember requesting relief may call witnesses. 32 C.F.R. § 723.4(d). All testimony presented at such a hearing "shall be given under oath or affirmation." 32 C.F.R. 723.5(4). Plaintiff has not yet filed his appeal to the BCNR, but has announced his intent to do so promptly.

For this Court to grant a preliminary injunction, plaintiff must establish that he has both "a reasonable probability of eventual success in the litigation" and that he "will be irreparably injured *pendente lite* if relief is not granted." *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1143 (3d Cir.1982), quoting *Oburn v. Shapp,* 521 F.2d 142, 147 (3d Cir.1975) (citations omitted). Since this case involves a government personnel issue, these standards must be read in light of the Supreme Court's decision in *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

In *Sampson* the Supreme Court held that district courts are not "wholly foreclosed" from granting preliminary injunctive relief to prevent the discharge of a civilian government employee before exhaustion of all administrative remedies. 415 U.S. at 83, 94 S.Ct. at 950. However, due to the "obviously disruptive effect" of judicial interference with the administrative process and "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs,'" the Court held that a plaintiff must "make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in Government personnel cases." 415 U.S. at 84, 94 S.Ct. at 949–950. These considerations are even more compelling in a military context. Noting "the peculiar and special relationship of the soldier to his superiors," the Supreme Court declared in *Chappell v. Wallace* that "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which

asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the Military Establishment." 462 U.S. 296, 300; 103 S.Ct. 2362, 2366, 76 L.Ed.2d 586 (1983) (citations omitted). Under *Sampson*, plaintiff must therefore establish that the need for injunctive relief in his case is so "extraordinary" as to merit the interference of the Court before his administrative remedies are exhausted. 415 U.S. at 92, n. 68, 94 S.Ct. at 953, n. 68.

Plaintiff argues that he is likely to succeed on the merits because the Board abused its discretion in several ways. In *Neal v. Secretary of the Navy*, the Court of Appeals for the Third Circuit held that "judicial review [of military decisionmaking] is available ... to determine if an action was arbitrary, capricious, or an unlawful exercise of discretion." 639 F.2d 1029, 1036 (3d Cir.1981) (citing *Jaffee v. United States*, 592 F.2d 712 (3d Cir.1979), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979).

Plaintiff contends that the Board abused its discretion by considering evidence of acts of indecent exposure because the charges were dismissed in the previous captain's mast. However, § 0407(B)(1) of the Navy's Procedure Study Guide ("PSG") states that "[t]he fact that a case has been to [captain's] mast ... and was dismissed without punishment being imposed would not preclude a subsequent imposition of punishment for the dismissed offenses." This provision is in accord with the law of this Circuit. As the Court of Appeals held in *Neal*, "it simply is not the law that only charges culminating in

an adverse decision on the merits have probative value." 639 F.2d at 1039. The captain's mast is not "a criminal trial and, as a result, the defense of former jeopardy is not available to one whose case has been disposed of at [captain's] mast. ..." PSG § 0407(B)(1).

Plaintiff also contends that it was highly improper for the Board to rely on evidence of his indecently exposing himself to women other than Prete in finding that plaintiff indecently assaulted Prete.[2] The Navy contends that the Board considered the alleged acts of indecent exposure only in relation to the characterization of the plaintiff's discharge. However, the Board explicitly stated in its report that it had considered "*all* witnesses and documentary evidence presented" in determining whether plaintiff had committed misconduct by commission of a serious offense (emphasis added). The Board could only properly base its decision regarding misconduct by commission of a serious offense on whether he had committed the indecent assault on Prete and on the drunk driving charges, because those were the only charges the notification letter specified.[3] However, the vast majority of the evidence introduced consisted of statements related not to the indecent assault of Prete but rather to alleged acts of indecent exposure before other women. Such evidence would be highly prejudicial in a case before this Court. *E.g., United States v. Schwartz*, 790 F.2d 1059, 1061 (3d Cir.1986.) While, concededly, "rules of evidence for courts-martial and other judicial proceedings are not applicable before an Administrative Board," 32 C.F.R. § 41, app. A, pt. 3(c)(5)(e),

---

2. The Board relies on the following provision from the Navy Military Personnel Manual ("NMPM") in considering evidence:

    2. General Procedural Instructions
    a. The Board functions as an administrative rather than a judicial body. Strict rules of evidence need not be observed; however, reasonable restrictions shall be observed concerning relevancy and competency of evidence.... The Board shall rely on its own judgment and experience in determining the weight and credibility to be given material received in evidence. The Board should consider any matter presented which is relevant to the case whether written or oral, sworn or unsworn.

NMPM, ch. 5, p. 36–54.

3. The Court in *Neal* emphasized "the importance of the opportunity to be apprised of the precise evidence which will be considered, so that an intelligent comment or response can be prepared." 639 F.2d at 1043. The Navy was not able to present any evidence that it advised plaintiff that information from the charges dismissed at the captain's mast would be used against him at the Board hearing. In fact, the Navy concedes that the notification letter sent to plaintiff only informed him that he was being considered for discharge due to his prior nonjudicial punishments for drunk driving and the indecent assault of Prete.

it is quite possible, if not likely, that introduction of unsworn evidence of other alleged sexual misconduct of plaintiff improperly "affect[ed] the integrity of the agency's factfinding and decisionmaking" in this case. *Neal*, 639 F.2d at 1042. If so, this may constitute an abuse of discretion.

Plaintiff also alleges that the Board abused its discretion in its decision to proceed with the hearing without live testimony from Prete. While plaintiff's Navy counsel may not have followed proper protocol for requesting the presence of Prete, he did notify the Staff Judge Advocate on June 10, 1993 that he felt it "vital that ... [plaintiff] have the opportunity to cross examine her during the hearing."[4] *Neal* held that a military board's reliance solely on written statements and Naval Investigative Service documents in the decision to dismiss a servicemember is not automatically an abuse of discretion. Nevertheless, the Assistant United States Attorney representing the Navy conceded at the preliminary injunction hearing before this Court that it would have been an abuse of discretion for the Navy to have failed to produce Prete to testify had she been present in Italy at the time of the Board proceeding, as the case against plaintiff hinged upon her credibility. This Court has no evidence before it of the circumstances surrounding the Navy's transfer of Prete to the United States one month prior to the proceeding,

how quickly or easily she could have been produced, or what the cost would have been to do so.

Plaintiff raises troublesome issues as to whether the Board abused its discretion in its conduct of the hearing. However, we need not determine plaintiff's likelihood of success on the merits due to this Court's resolution of the issue of irreparable harm.

Plaintiff argues that it may be years before the BCNR will hear his appeal. He claims he will be irreparably harmed in the interim by the stigma resulting from a general discharge under honorable conditions after 12 years in the Navy and by the loss of his income. He asserts he will face difficulty in finding employment due to this alleged stigmatization, the loss of his security clearance, and the coding of his discharge to reflect serious offenses. He presented no evidence at the hearing to substantiate these allegations.

The Supreme Court in *Sampson* held that district courts may grant preliminary injunctive relief to prevent the discharge of a government employee only in the "extraordinary" case in which "circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." 415 U.S. at 92, n. 68, 94 S.Ct. at 953, n. 68.

---

4. The Naval Military Personnel Manual sets forth procedures regarding the calling of witnesses as follows:

  3. Rights of respondent. A respondent who has elected an Administrative Board and whose case is presented to such Board has the following rights:

  . . . .

  c. Respondents may request the attendance of witnesses in their behalf at the Administrative Board.

  (1) The respondent's request shall be in writing, dated, signed by the respondent or his or her counsel, and submitted to the Convening Authority for his or her decision via the senior member of the Board as soon as practical after the need for the witness is known to the respondent or to his or her counsel. Failure to submit a request for witnesses in a timely fashion shall not automatically result in denial of the request, but if it would be necessary to delay the hearing in order to obtain a requested witness, lack of timeliness in submitting the witness request may be considered along with

other factors in deciding whether or not to provide the witness.

  . . . .

  (3) The Convening Authority may authorize expenditure of funds for production of witnesses ... after determining that the significance of the personal appearance of the witness, when balanced against the practical difficulties in producing the witness, favors production of the witness. Factors to be considered in relation to the balancing test include, but are not limited to, the cost·of producing the witness, the potential delay in the proceeding that may be caused by producing the witness, or the likelihood of significant interference with military operational deployment, mission accomplishment, or essential training.

  (4) If the Convening Authority determines that the personal testimony of a witness is required, the hearing shall be postponed or continued, if necessary, to permit the attendance of the witness. Military witnesses shall be issued [temporary additional duty] orders....

  NMPM, ch. 5, p. 36–55.

Although *Sampson* involved a probationary civilian government employee, several courts have held that the rule applies to members of the military as well. *Guerra v. Scruggs,* 942 F.2d 270, 274 (4th Cir.1991), *Chilcott v. Orr,* 747 F.2d 29, 33 (1st Cir.1984). We note that plaintiff is to receive a general discharge under honorable conditions, not a dishonorable discharge, which carries much more serious consequences. At least four courts of appeals have rejected claims that any stigma attached to a general discharge under honorable conditions is sufficiently extraordinary to merit the imposition of a preliminary injunction. *Guerra,* 942 F.2d at 274, *Hartikka v. United States,* 754 F.2d 1516 (9th Cir. 1985), *Chilcott,* 747 F.2d at 34, *McCurdy v. Zuckert,* 359 F.2d 491 (5th Cir.1966), *cert. denied,* 385 U.S. 903, 87 S.Ct. 212, 17 L.Ed.2d 133 (1966). We agree. Furthermore, the *Guerra* court explicitly held that the district court erred in granting an injunction prohibiting the discharge of a serviceman pending an appeal to the Army Board for Correction of Military Records, despite the district court's finding that the administrative appeal process might take years. 942 F.2d at 274.

We do not see how plaintiff's discharge under the circumstances of this case is more harmful than the injury to a civilian government employee when terminated for an alleged wrongdoing. Plaintiff's situation is not "extraordinary," nor does it "so far depart from the normal situation that irreparable injury might be found." *Sampson,* 415 U.S. at 92, n. 68, 94 S.Ct. at 953, n. 68. Based on the Supreme Court decision in *Sampson* as well as the precedents of *Guerra, Hartikka, Chilcott,* and *McCurdy,* this Court finds that plaintiff has failed to establish that irreparable harm will occur if he is discharged from the Navy pending a decision by the BCNR.[5] Accordingly, plaintiff's motion for a preliminary injunction will be denied.

### ORDER

AND NOW, this 5th day of October, 1993, for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED that

---

5. Without evidence to the contrary, we will presume that the BCNR will act promptly and not

the motion of plaintiff, Edward Wilburn, for a preliminary injunction is DENIED.

It is further ORDERED that this Court's temporary restraining Order entered on September 14, 1993 and extended on September 24, 1993 is VACATED.

---

unreasonably delay a decision on any appeal filed by plaintiff.