Negrón Soto, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El Hospital Dr. Pila de Ponce recurre ante nos de la Resolución del Departamento de Salud de Puerto Rico de 1 de mayo de 1998, notificada el mismo día, mediante la cual se le deniega su solicitud del Certificado de Necesidad y Conveniencia para añadir treinta (30) camas agudas a las ya existentes en sus facilidades hospitalarias. Expedimos el auto solicitado y por los fundamentos que se exponen a continuación revocamos la misma. Consideremos los hechos aplicables.
I
El Hospital Dr. Pila de Ponce presentó el 22 de julio de 1997 ante el Departamento de Salud de Puerto Rico, en lo sucesivo Salud, la propuesta número 97-07-069 solicitando un Certificado de Necesidad y Conveniencia, en adelante Certificado, para añadir treinta (30) camas de cuidado agudo general en esa institución. El 18 de marzo de 1998 se celebró una vista administrativa ante la Oficial Examinadora, Jeannette Arias, de la División de Vistas Administrativas de Salud, a la cual comparecieron, además del Hospital Dr. Pila, el Hospital San Cristóbal, endosando la propuesta del primero. El Hospital Episcopal San Lucas compareció por escrito retirando su oposición a la propuesta del Hospital Dr. Pila e indicando que el criterio de proporción de 2.5 camas agudas por cada 1,000 habitantes que establecía el Reglamento del Secretario de Salud Núm. 56 de 14 de agosto de 1986 era en atención a las camas en uso y no a las autorizadas. El Hospital Bella Vista, el Hospital Regional Gándara de Ponce, el Hospital de Area de Guayama y el Hospital Santa Rosa no comparecieron a la vista a pesar de que habían notificado a Salud su intención de participar. En dicha audiencia el Hospital Dr. Pila sometió su informe de viabilidad. Luego de escuchada y evaluada la prueba testifical y documental presentada y de considerado el informe de la oficial examinadora, la Secretaria de Salud, Dra. Carmen Feliciano de Melecio, adoptó la recomendación del mismo y denegó el Certificado solicitado. Estableció en lo pertinente lo siguiente:

*936
"Aplicando la fórmula del Reglamento 56 hay necesidad para 1,493 camas de acuerdo a la población. Hay autorizadas 1,543 de las cuales están en uso 1,399. -

En relación al criterio específico de que las solicitudes de aumento de camas se analizaran [sic] bajo la norma de 2.5 camas de cuidado agudo general por cada 1,000 habitantes, determinamos que dicha norma se refiere al total de camas autorizadas y no al total de camas agudas en uso en la Región. Lo anterior se desprende del hecho de que la capacidad de expansión y aumento de camas en la Región tan sólo puede ser adecuadamente medida tomando en cuenta el número de camas agudas autorizadas.

De esa forma se [sic] existe un incremento en la demanda de camas en la Región, entonces los hospitales que tengan camas autorizadas en exceso de las camas en uso podrán poner en uso dichas camas y de esa forma satisfacen la demanda de camas en la Región. Tan sólo con posterioridad a que se utilizen [sic] el 100 % de las camas autorizadas en la Región podrá considerarse una solicitud para añadir camas en la Región, toda vez que en dicho caso ya no existiriá [sic] ninguna capacidad de expansión de la oferta de camas en la Región producto del exceso de camas autorizadas Sobre camas en uso, no debe considerarse la adición de nuevas camas toda vez que se sobrepasaría [sic] la norma de 2.5 camas por cada mil habitantes." (Enfasis Nuestro.) Informe de la Oficial Examinadora, págs. 3 y 4.
El 18 de mayo de 1998 el Hospital Dr. Pila presentó moción de reconsideración ante Salud, la cual no fue considerada. Inconforme, el 1ro de julio de 1998, el Hospital Dr. Pila presentó recurso de revisión ante nos. Solicitó que expidiéramos el auto de revisión, que revoquemos la resolución recurrida y concedamos el Certificado solicitado. Alega que:

“Erró la Honorable Secretaria de Salud al denegar el Certificado de Necesidad y Conveniencia bajo el único fundamento de que no se cumplía con el criterio específico de necesidad de una proporción de 2.5 camas por cada 1000 habitantes por ser absolutamente inexistente tal criterio a la fecha de emisión del dictamen en virtud de haber derogado en su totalidad el Reglamento Núm. 56 que incluía aquél y, en la alternativa, al interpretar que tal criterio se basa en el número de las camas autorizadas y no en el número de las camas en uso como ha sido la interpretación de ese criterio por la propia agencia en este mismo caso y en otra petición similar. ”

Posteriormente, Salud, a través del Procurador General, presentó alegato ante nos y luego de reconocer que había dudas en cuanto a cuál Reglamento se había aplicado, solicitó que devolvamos el presente recurso ante la consideración de Salud para que sea dicho Foro quien decida cuál es el Reglamento, Núm. 56 ó el Núm. 89, infra, aplicable a la situación de marras. El Hospital Episcopal San Lucas también compareció ante nos y al igual que el Hospital Dr. Pila solicitó que emitiéramos el auto de revisión y revoquemos la Resolución Recurrida.
Consideremos el derecho aplicable.
II
La Ley Núm. 2 de 7 de noviembre de 1975, según enmendada en su Artículo 3, 24 L.P.R.A. sec. 334b, le concede faculta al Secretario de Salud para conceder los Certificados. Esto son definidos por la Ley Núm. 2, ibid, en su Artículo 1,2 L.P.R.A. sec. 334(e), de la siguiente manera:

"Documento emitido por el Secretario de Salud autorizando a una persona a llevar a cabo cualquiera de las actividades cubiertas por las sees. 334 a 334j de este título, certificando que la. misma es necesaria para la población que va a servir y que no afectará indebidamente los servicios existentes, contribuyendo así al desarrollo ordenado y adecuado de los servicios de salud en Puerto Rico."

Al amparo de la Ley Núm. 2, ibid, 24 L.P.R.A. secs. 331 et seq., se aprobaron los Reglamentos del Secretario Núm. 56 de 14 de agosto de 1986. Para establecer todo lo relacionado con las solicitudes de Certificado de Necesidad y Conveniencia y el otorgamiento de éstos; establecer las normas que se requerirán a los solicitantes; fijar penalidades para otros fines, según lo dispuesto en la Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, y luego el 89 Para Regular el Proceso de Evaluación de *937 Solicitudes para el Otorgamiento de Certificados de Necesidad y Conveniencia. Este último, número 89, fue aprobado el 16 de octubre de 1997 y radicado en el Departamento de Estado el día 20 de octubre siguiente; entró en vigor a los treinta (30) días siguientes de su presentación. Este deroga expresamente el Reglamento 56 de 14 de agosto de 1986, radicado en el Departamento de Estado el 15 de agosto de 1986 al ser aprobado el número 89; se consigno que su propósito específico era:
"...agilizar y expeditar el proceso de consideración y análisis de las solicitudes de concesión de Certificados de Necesidad y Conveniencia así como el atemperar dicho proceso a la actual política pública en torno a la prestación de servicios de salud en Puerto Rico según definida en las disposiciones de las leyes número 190 de 5 de septiembre de 1996 y la número 72 del 7 de septiembre de 1993, según enmendada." 
Los reglamentos en vigor al momento de ventilarse los procedimientos administrativos son los que gobiernan los mismos y no los que estaban en vigor al momento en que ocurrieron los eventos que dieron lugar a la controversia. Chilcott v. Orr, 747 F.2d 29, 34 (1984). A esos efectos, en Thorpe v. Housing Authority of Durham, 393 US 268, 392-393 (1969), el Tribunal Supremo de los Estados Unidos dispuso que es norma conocida que los tribunales apelativos tienen que aplicar la ley en vigor al momento en que emite su opinión. Véase también, Bradley v. Richmond School Board, 416 U.S. 696, págs. 715-716 (1974); Hirschbercí v. Braniff Airways, Inc., 404 F. Supp. 869, 873 (1975). 
En el Informe de la Oficial Examinadora, adoptado por la Secretaria de Salud en la Resolución recurrida, se usa como base para la denegación del Certificado solicitado el Reglamento Núm. 56, ibid, el cual estaba vigente al momento de presentarse la solicitud (22 de julio de 1997) y no el Núm. 89, ibid, el que estaba vigente al momento de celebrarse la vista administrativa (18 de marzo de 1998). Este último eliminó el criterio de 2.5 camas por cada 1,000 habitantes, razón fundamental litigada por la Secretaria de Salud al denegar el Certificado. Al respecto, sostiene el Hospital Dr. Pila que en atención al cambio en política pública expresado por las Leyes Núm. 190 y 72, ibid, bajo las cuales se aprueba el nuevo reglamento "existe un conflicto irreconciliable... siendo ambos cuerpos reglamentarios del mismo tenor, para el mismo fin y relativos a la misma materia...", por lo que debe prevalecer el último. Alegato de la parte recurrente, pág. 5. De otro lado, el Procurador General establece que la interpretación del Reglamento Núm. 56 es una razonable y alega que la controversia en cuanto a cuál reglamento debe aplicar en el caso de marras debe ser resuelta en primera instancia por Salud. 
En el caso ante nos el Reglamento núm. 89, ibid, era el que estaba vigente al momento de celebrarse la vista administrativa. Este refleja la nueva política pública del estado en atención a la reforma de salud que pretende "transferir a entidades privadas las instalaciones de salud pública... para que estas entidades las operen como una empresa privada, sujeto a las leyes del mercado y la libre competencia". Ley Núm. 190, ibid., Exposición de Motivos. En atención a ello, se pretendió atemperar el procedimiento de la aprobación de los certificados a lo dispuesto en las Leyes Núm. 190 y 72, ibid. Dicho Reglamento, además de derogar expresamente el Reglamento Núm. 56, ibid, no dispone que el mismo aplicará de manera prospectiva. En consecuencia, concluimos que el Reglamento Núm. 89, ibid, era el aplicable a la situación de marras, contrario a lo resuelto por Salud. No obstante, aun cuando el Reglamento 56, ibid, hubiese sido aplicable a la situación ante nos, tampoco procedía la denegación del Certificado. Veamos.
III
El Reglamento Núm. 56, ibid, establece en su Artículo VI entre los criterios específicos para la aprobación de los certificados "la norma de 2.5 camas de cuidado agudo general por cada 1,000 habitantes." En el caso de marras no estando en controversia el número de camas autorizadas ni cuáles de las mismas estaban en uso, Salud interpretó que dicho requisito se refiere a las camas autorizadas y no a las en uso, contrario a lo que determinó al considerar una petición similar, Propuesta Núm. 94-07-043, del Hospital Auxilio Mutuo, pág. 9, nota al calce número 3, incluida en el apéndice del alegato del Hospital Episcopal San Lucas, pág. 15, para añadir cien camas agudas expresó, lo siguiente:

“Toda vez que el Reglamento Núm. 56 no especifica si se trata de camas autorizadas o en uso, interpretamos dicho criterio de la manera más racional, o sea, que la proporción de 2.5 camas por 
*938
cada 1, 000 habitantes se refiere a camas en uso o en existencia. De poco le sirve a un paciente una cama autorizada, pero inexistente. ”

Las agencias administrativas luego de promulgar un reglamento "para facilitar su proceso decisional y limitar el alcance de su discreción viene obligada a observarlo estrictamente...". García Cabán v. U.P.R., 120 D.P.R. 167, 175. Véase, también, García v. Adm. del Derecho al Trabajo, 108 D.P.R. 53, 56-57 (1978). Asimismo, aunque la interpretación que éstos hacen de ellos es de carácter persuasivo las agencias suelen darle una deferencia considerable a sus interpretaciones anteriores. H. Koch, Jr. Administrative Law and Practice, St. Paul, Minn., West Publishing Co., 1997, Vol. 3, pág. 136. Textile Dye Works, Inc. v. Srio. de Hacienda, infra. Dicha interpretación es revisable por los tribunales.
La Ley de Procedimiento Administrativo Uniforme en su sec. 4.5, 3 L.P.R.A. sec. 2175, establece:

“El tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. ”

A esos efectos, nuestro más alto Foro ha establecido que:
“[e]s norma reiterada de este Tribunal la de merecerle gran consideración y respeto, [a] las conclusiones e interpretaciones de los organismos administrativos especializados. Colonos de Caña de Santa Juana, Inc. v. Junta Azucarera, 77 D.P.R. 392, 396 (1954); South P.R. Sugar Co. v. Junta, 82 D.P.R. 847, 864.
Sin embargo, nuestro más alto Foro ha expresado que dicha interpretación administrativa tiene que estar apoyada "explícitamente en la razón y la ley" y tiene que ser "parte de un patrón integrado y razonable de reglamentación. ” South P.R. v. Junta, supra, pág. 865. Ello no se cumple "cuando se dictan soluciones contradictorias para situaciones fundamentales idénticas." Textile Dye Works, Inc. v. Srio. De Hacienda, 95 D.P.R. 708, 715 (1968) 
En el caso de autos Salud emitió una decisión que obviamente está en contradicción con la tomada anteriormente al considerar la propuesta del Auxilio Mutuo, ibid. Nada de lo establecido en el informe de la oficial examinadora y adoptado por la Resolución recurrida justifica tal cambio. A esos efectos, adoptamos lo expresado por el Hospital Episcopal San Lucas en su Escrito en Cumplimiento con Resolución, pág. 9:
La secretaria basó su nueva interpretación en que aquellos hospitales de la Región Sur de Salud que tuviesen menos camas en uso que las autorizadas, se beneficiarían, ipso facto, de aumentos futuros en la demanda de servicios hospitalarios por residentes de dicha región. Esto, a su vez, causaría que tales hospitales aumentaran su número de camas en uso. La anterior conclusión, es necesario puntualizar, está desprovista de apoyo en la prueba. 0 sea, nada hay en el expediente administrativo que permita el llegar a tal conclusión. De hecho, la oficial Examinadora en su informe, al formularla, no hace referencia a prueba alguna. Se trata meramente de una conclusión.
Un incremento en la demanda por servicios hospitalarios en un área de servicio no significa que ipso facto el número de admisiones a todos los hospitales del área va a aumentar proporcionalmente. Inciden varios factores para que ello ocurra, entre éstos, la composición, tamaño y reputación de la facultad médica, los equipos médicos especializados con que cuenta un hospital, la capacidad de su sala de emergencia, la proximidad de oficinas médicas, y la ubicación y el estado de las instalaciones. Además, y como bien se señalara en el Informe del Oficial Examinador en el caso del Hospital Auxilio Mutuo antes aludido: "De poco le sirve a un paciente una cama autorizada, pero inexistente. ”
Es por ello que entendemos que erró Salud al concluir de manera contradictoria ante situaciones de *939 hechos idénticas sin justificar su cambio de posición. En ausencia de una razón válida, Salud no puede actuar a su soberana voluntad dejando de reconocer derechos a las partes que antes había reconocido y resolver ahora que el requisito de necesidad antes expresado se refería a las camas autorizadas y no a las en uso. Cf García Caban v. U.P.R., 120 D.P.R. 167 (1987).
Así, bajo cualquier alternativa la Resolución de Salud no puede prevalecer y en consecuencia, según solicitado por el Procurador General, no procede devolver el caso ante nos al Departamento de Salud. Ello conllevaría un ejercicio fútil. "El debido proceso de ley ni el derecho coexisten para exigir cosas imposibles, absurdas, ni inútiles o innecesarias". Pueblo v. Andréu González, 105 D.P.R. 315, 321 (1976). De hecho, el informe de la Oficial Examinadora, luego de mencionar los requisitos que la Ley Núm. 2, según enmendada, establece en su Artículo 3, 24 L.P.R.A. sec. 334b, para la aprobación o denegación de los Certificados y de aparentemente considerarlos, sólo expuso como razón para su denegación el hecho que no se cumplía con el antes referido requisito de necesidad. Véase Reglamento Núm. 56, Artículo VI, ibid. La Oficial Examinadora estableció, específicamente, que de acuerdo a la población de la región hay necesidad para 1,493 camas, de las cuales hay autorizadas 1,543 y sólo 1,399 están en uso. Tomando en consideración que el Hospital Dr. Pila cumplió con los demás requisitos establecidos tanto por el Reglamento Núm. 56 como por la Ley Núm. 2, según enmendada, ibid, procedía la aprobación del certificado. A igual determinación habrá que llegar al amparo del Reglamento Núm. 89, ibid, el cual en su Artículo VI adoptó los criterios de evaluación establecidos en la Ley Número 2, ibid, y no incluyó el requisito de necesidad objeto de controversia. La Oficial Examinadora al examinar la propuesta del Hospital Dr. Pila enumeró y consideró estos requisitos y sólo determinó que esa institución hospitalaria no cumplía con el de necesidad, supra. Por lo tanto, procede la aprobación del Certificado de Necesidad y Conveniencia solicitado.
IV
En atención a lo antes mencionado se expide el auto solicitado, se revoca la Resolución del Departamento de Salud de Puerto Rico emitida el 1ro de mayo de 1998, y se le ordena a la recurrida que expida el Certificado de Necesidad y Conveniencia solicitado.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General